IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 114,705
114,707

ROCHELLE PATTERSON, Mother and Next Best Friend of
NICOLETTE PATTERSON, a Minor, and
GAVIN PATTERSON, a Minor,
*Appellant*,

v.

COWLEY COUNTY, KANSAS, KANSAS DEPARTMENT OF WILDLIFE, PARKS AND TOURISM,
and BOLTON TOWNSHIP,
(ELAINE SELENKE as Heir-at-Law of CORTNEY BREWER, Deceased),
*Appellees.*

SYLLABUS BY THE COURT

1.

To use a statute to establish a duty of care, a plaintiff must fully satisfy the duty requirements of a negligence action, including the requirement that the defendant owed the duty to the plaintiff.

2.

Whether a legal duty exists is a question of law.

3.

When a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be. A court determines legislative intent by first applying the meaning of the statute's text to the specific situation in controversy.

1

4.

The Uniform Act Regulating Traffic provides at K.S.A. 2017 Supp. 8-2005(a) that local authorities in their respective jurisdictions must place and maintain such traffic-control devices upon highways as they may deem necessary to carry out the Act or local traffic ordinances or to regulate, warn, or guide traffic. All such traffic-control devices erected must conform to the state manual and specifications.

5.

The term "local authorities" in K.S.A. 2017 Supp. 8-2005(a) means "the Kansas turnpike authority and every city, county and other local board or body having authority to adopt ordinances or regulations relating to vehicular traffic under the constitution and laws of this state." K.S.A. 8-1432.

6.

The Manual on Uniform Traffic Control Devices does not create a general obligation to initially or periodically survey a county's entire roadway system to decide whether to install a traffic-control device or add new ones.

7.

When all material facts are uncontroverted, whether an exception to the Kansas Tort Claims Act applies to grant immunity to a governmental entity is a question of law.

8.

The Kansas Tort Claims Act contains a signing exception at K.S.A. 2017 Supp. 75-6104(h), which bifurcates governmental liability for traffic signs into two areas:  (i) maintenance; and (ii) placement or removal of signs.

9.

When making a signage decision, the Manual on Uniform Traffic Control Devices controls whether a local authority is entitled to discretionary function immunity.

Review of the judgment of the Court of Appeals in 53 Kan. App. 2d 442, 388 P.3d 923 (2017). Appeal from Cowley District Court; NICHOLAS M. ST. PETER, judge. Opinion filed March 16, 2018. Judgment of the Court of Appeals affirming in part, reversing in part, and remanding to the district court is affirmed as to the issues subject to review. Judgment of the district court is affirmed in part and reversed in part.

*Jeffery L. Carmichael*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause and was on the briefs for appellant.

*Charles E. Millsap*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Lyndon W. Vix*, of the same firm, was with him on the briefs for appellee Cowley County, Kansas.

*Edward L. Keeley*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and was on the briefs for appellee Bolton Township.

*Donald A. McKinney*, of Wichita, was on the brief for appellee Elaine Selenke.

The opinion of the court was delivered by

BILES, J.:  This interlocutory appeal arises from wrongful death lawsuits alleging Bolton Township, Cowley County, and the Kansas Department of Wildlife, Parks and Tourism (KDWPT) negligently failed to provide adequate traffic-control devices—warnings, signs, or barriers—on a rural road that abruptly ends at a riverbank. Two people drowned when their vehicle drove off the road and flipped end-over-end into the river. Our focus is on three discrete aspects:  (1) the Township's legal duty regarding traffic-control devices; (2) the County's failure to conduct an engineering study to assess

the need for such devices; and (3) the County's assertion of statutory immunity under the Kansas Tort Claims Act, K.S.A. 75-6101 et seq. (KTCA), for the claims. The claim against KDWPT is not before us.

We hold the Township had no legal duty to place traffic-control devices along the road where the accident occurred. State law specifies the entities authorized to install traffic-control devices, and the Township is not among them. The district court correctly entered summary judgment for the Township. We further determine the County had no duty to perform an engineering study as claimed.

Finally, we hold the County is immune from liability for the signage claims under the KTCA's discretionary function exceptions. See K.S.A. 2017 Supp. 75-6104(e), (h). Our holding is founded on the Manual on Uniform Traffic Control Devices (MUTCD), adopted by the Secretary of the Kansas Department of Transportation. See K.S.A. 8-2003 (mandating the transportation secretary adopt a manual). This manual has the force and effect of law. K.S.A. 2017 Supp. 8-2005(a) ("All such traffic-control devices hereafter erected shall conform to the state manual and specifications.").

The district court's summary judgment order regarding the County is affirmed in part and reversed in part as to the issues subject to our review. These rulings make it unnecessary to decide other statutory immunity defenses asserted by the County.

FACTUAL AND PROCEDURAL BACKGROUND

Jason Patterson and Cortney Brewer drowned when their vehicle drove off a rural roadway into the Arkansas River. The road they were on ran east to west in Bolton Township, which is in Cowley County. At its easternmost point, the road ends at or near the river.

4

The County opened the road in 1873. In 1917, it was reclassified as a township road. In 1955, the County designated a portion, now known as 322nd Road, as a county road. It intersects with 111th Road about one mile west of the river and continues east for about three quarters of a mile. The remaining quarter mile to the river is a township road. The portion known as 322nd Road is paved, while the quarter-mile township road is not. The unpaved township road runs through the Kaw Wildlife Area, which is owned by the federal government and operated as a wildlife area by KDWPT. There is evidence the township road actually ends about 300 feet before the river.

The County had posted a "Pavement Ends" warning sign displayed to drivers headed toward the unpaved portion of the roadway about 600 feet before the transition. There were markers in the vicinity warning motorists of culvert headwalls. No traffic-control barricades or warning signs existed on the unpaved township portion of the road to the river.

After the accident, Rochelle Patterson filed suit on behalf of two of Jason's surviving minor children. Cortney's mother, Elaine Selenke, filed two actions—one on her own behalf and one on behalf of herself and Cortney's estate. The consolidated lawsuits alleged the Township, County, and KDWPT negligently failed to provide adequate warnings, signs, barriers, or other indications the road ended at the river. The parties filed motions for summary judgment after completing discovery.

For their part, plaintiffs submitted evidence to show the Township and County were negligent in failing to: (1) place an advisory speed plaque under the "Pavement Ends" sign suggesting a speed of 5 miles per hour; (2) place a "Dead End" sign at the intersection of 322nd Road and 111th Road for drivers headed toward the river; (3) place a barricade and "object marker" where the roadway ends, with a "Dead End" sign 100

5

feet before that point; and (4) conduct an engineering study to determine what warnings or signs were necessary.

As a foundational matter, the district court ruled the County had jurisdiction over the paved portion of the roadway and the Township had jurisdiction over the unpaved portion. The court entered summary judgment in the Township's favor on all claims, ruling the Township had no legal duty under the applicable statutes to place traffic-control devices, guidance, or other warnings on the township road.

As to the County, the district court granted summary judgment in part and denied it in part. It ruled the County was immune under the KTCA for failing to post an advisory speed plaque on 322nd Road because the decision whether to post that sign was within the County's discretion and because speed was not a causative factor in the accident. But the court found a jury question existed as to whether the County was statutorily immune for failing to post a "Dead End" or "No Outlet" sign on 322nd Road, because it could not conclude as a matter of law the accident would not have occurred if such a sign had been present. In other words, it believed there was a factual question whether that omission caused the accident, so it could not determine whether the KTCA's discretionary function exception would apply. The court ruled the "Dead End" or "No Outlet" signage claim could proceed to trial.

The court further found the County was not entitled to judgment under the KTCA's recreational use immunity because there was no evidence the County participated in the road's plan, design, or integration into the wildlife area, so it had done nothing to warrant that statutory protection. Finally, it ruled the County was not entitled to immunity for failing to inspect the unpaved township road since the need for an inspection was a disputed issue of fact. The court did not specifically address Patterson's

6

claim that the County was liable for its road signage decisions, allegedly resulting from a negligent failure to conduct an engineering study.

The district court certified its summary judgment order for interlocutory appeal under K.S.A. 2015 Supp. 60-2102(c) (authorizing district court to make certain findings to permit appeal in civil actions for orders not otherwise appealable). It found substantial grounds existed for differences of opinion on the duties, if any, the Township and County owed regarding traffic-control devices. The Court of Appeals granted requests from both Patterson and the County to take interlocutory appeals on the district court's adverse rulings affecting them. See K.S.A. 2017 Supp. 60-2102(c) (upon district court certification for interlocutory appeal, Court of Appeals may permit an appeal in its discretion). Selenke did not appeal and was designated as an appellee and a cross-appellee. The interlocutory appeals were consolidated. No one appealed the district court's ruling granting summary judgment in KDWPT's favor.

In a published decision, a Court of Appeals panel affirmed in part and reversed in part. See *Patterson v. Cowley County, Kansas*, 53 Kan. App. 2d 442, 388 P.3d 923 (2017). The panel agreed with the district court's conclusion that the Township did not owe a duty with respect to traffic-control devices or warning signs. 53 Kan. App. 2d at 484. It also held the County had no duty to conduct an engineering study. 53 Kan. App. 2d at 469-70, 484. As to the County's KTCA immunity defense, the panel agreed the County had discretionary function immunity for its failure to install an advisory speed plaque. But the panel reversed the district court's ruling on the County's discretionary function immunity for the "Dead End" or "No Outlet" signs, ruling the County was immune for those claims. 53 Kan. App. 2d at 469-70. Finally, and without considering whether it was necessary to reach the remaining issues since it already ruled against Patterson on all her claims, the panel agreed with the district court that the County was not entitled to recreational use or inspection immunity. 53 Kan. App. 2d at 471-72.

7

Patterson petitioned for this court's review of the panel's decisions regarding: (1) the Township's duty to place traffic-control devices and warning signs; (2) the County's duty to conduct an engineering study; and (3) the County's discretionary function immunity. The County cross-petitioned for review of the panel's recreational use and inspection immunity rulings. We granted both petitions.

Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court jurisdiction to review of Court of Appeals decisions upon petition for review).

STANDARD OF REVIEW

Our standard for reviewing summary judgment is well-known:

"'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'" *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 622, 345 P.3d 281 (2015).

8

THE TOWNSHIP OWED NO DUTY TO INSTALL TRAFFIC-CONTROL DEVICES

Our first question is whether the panel erred by holding the Township did not have a legal duty to install traffic-control devices—specifically, a barricade and a nearby "Dead End" sign at the end of the Township's unpaved roadway.

A plaintiff in a negligence action must prove four things: (1) a duty owed to the plaintiff, (2) breach of that duty, (3) causation between the breach of duty and the injury to plaintiff, and (4) damages suffered by the plaintiff. *Shirley v. Glass*, 297 Kan. 888, 894, 308 P.3d 1 (2013). Our attention is on the first element—a duty owed by the Township. To "utilize a statute to establish a duty of care, a plaintiff must fully satisfy the duty requirements of a negligence action, including the requirement that the defendant owe the duty to the plaintiff." 297 Kan. at 895. Whether a legal duty exists is a question of law rather than a fact issue for the jury. *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 920, 257 P.3d 287 (2011).

Generally speaking, there is a duty to maintain highways, but the scope of that duty "is to be determined on a case-by-case basis and no hard and fast rule can be stated which would cover all possible future factual situations." *Toumberlin v. Haas*, 236 Kan. 138, 144, 689 P.2d 808 (1984). Patterson argues the Township's duty arises from two statutory sources: the Uniform Act Regulating Traffic, K.S.A. 8-1401 et seq., and K.S.A. 2017 Supp. 68-526—which predates the Uniform Act Regulating Traffic and broadly provides that townships have "general charge and supervision of all township roads." Resolving the question of duty, as Patterson argues it, requires statutory interpretation or construction. That raises questions of law subject to de novo review. *Midwest Crane & Rigging, LLC v. Kansas Corporation Comm'n*, 306 Kan. 845, 848, 397 P.3d 1205 (2017).

9

When a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be. A court determines legislative intent by first applying the meaning of the statute's text to the specific situation in controversy. When the language is unclear or ambiguous, the court employs canons of statutory construction, consults legislative history, or considers other background information to determine the statute's meaning. *Hoesli v. Triplett, Inc.*, 303 Kan. 358, 362, 361 P.3d 504 (2015). Our statutory analysis necessarily includes review of state laws specifying responsibility for Kansas roads.

The barricade and sign Patterson claims the Township negligently failed to install would be considered "'[o]fficial traffic-control devices,'" which the Uniform Act Regulating Traffic defines as "all signs, signals, markings, and devices, not inconsistent with this act, *placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning, or guiding traffic*." (Emphasis added.) K.S.A. 8-1442. And the statutory scheme is clear that only specified entities may place or erect official traffic-control devices. K.S.A. 8-1512(a) ("No person shall place . . . any unauthorized sign, signal, marking or device which purports to be . . . an official traffic-control device."); see also K.S.A. 8-1447 (defining "'[p]erson'" to mean "every natural person, firm, association, partnership or corporation").

In determining whether the Uniform Act imposes a duty on the Township to install traffic-control devices, we look first to K.S.A. 2017 Supp. 8-2005, which provides:

> "(a) Local authorities in their respective jurisdictions shall place and maintain such traffic-control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this act or local traffic ordinances or to regulate, warn or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications.

10

"(b) Local authorities in exercising those functions referred to in subsection (a) shall be subject to the direction and control of the secretary of transportation with respect to highways and streets designated by the secretary as connecting links in the state highway system.

"(c) In townships located in Douglas, Johnson, Riley, Shawnee and Sedgwick counties, the township board shall place and maintain traffic-control devices, other than regulatory signs, on township roads under the board's jurisdiction. In addition, such township board shall place and maintain regulatory signs on township roads under the board's jurisdiction consistent with resolutions of the board of county commissioners of the county in which the township road is located. For this purpose, a regulatory sign is a sign setting forth a regulation, the violation of which subjects the operator of the motor vehicle to fine, imprisonment, or both.

"Nothing in this subsection shall be construed as precluding the board of county commissioners from placing and maintaining traffic-control devices on township roads, if the board determines that traffic-control devices or signs placed by a township are inadequate, but the board of county commissioners shall have no obligation to do so."

The express statutory duty to "place and maintain traffic-control devices, other than regulatory signs, on township roads" recited in subsection (c) plainly does not apply to the Township because it is not located within any of the five listed counties. Subsections (a) and (b) speak to the duties owed by "local authorities," so we must consider whether the Township falls within that broad descriptor.

K.S.A. 8-1432 statutorily defines the term "local authorities" to mean "the Kansas turnpike authority and every city, county and other local board or body having authority to adopt ordinances or regulations relating to vehicular traffic under the constitution and the laws of this state." This leaves open the possibility the Township could be considered

11

a "local board or body" with "*authority to adopt ordinances or regulations relating to vehicular traffic.*" (Emphasis added.)

But this open question is readily answered by looking to the statutes through which the Legislature specifically authorizes townships to act in defined areas. K.S.A. 2017 Supp. 80-101 broadly provides:

"Each organized township in this state shall be a body politic and corporate, and in its proper name sue and be sued, and may appoint all necessary agents and attorneys in that behalf, purchase and hold real and personal property for the use of the township, sell, convey and dispose of real and personal property owned by the township, and may make all contracts that may be necessary and convenient for the exercise of its corporate powers."

K.S.A. 2017 Supp. 68-101(e) defines "township roads" to mean "all roads within a township not within a county road unit county other than federal, state, and county roads." It is undisputed Cowley County has not adopted a county road unit system, so maintenance over township roads within Cowley County remains to some extent with the townships in that county. See K.S.A. 68-523 (township trustee, clerk, and treasurer "shall constitute the township board of highway commissioners"); K.S.A. 80-301(a) (trustee may divide township into road districts); K.S.A. 80-306 (trustee may prosecute traffic violations in name of township; county attorney required to act on township's behalf); K.S.A. 80-307 (trustee may remove obstructions from highways). But what does that maintenance responsibility entail?

Patterson has not identified any provision in the Kansas Constitution or statutes authorizing townships to adopt ordinances or regulations specifically relating to vehicular traffic—and we have found none. Instead, she points to K.S.A. 2017 Supp. 68-526, which references "general charge and supervision of all township roads." But that statute also

12

limits placement and maintenance authority for traffic-control devices to townships in specific counties. It provides:

> "(a) In all counties not operating under the county road unit system the township board shall have *the general charge and supervision of all township roads and township culverts* . . . . The board shall procure machinery, implements, tools, drain tile, stone, gravel and any other material or equipment required, for the construction or repair of such roads and culverts. All work shall be done in accordance with plans and specifications and the general regulations to be prepared and furnished by the county engineer.

> "(b) In townships located in Douglas, Johnson, Riley, Shawnee and Sedgwick counties, *the township board shall place and maintain traffic-control devices and guidance, warning and regulatory signs on all township roads as provided by K.S.A. 8-2005, and amendments thereto.*" (Emphases added.) K.S.A 2017 Supp. 68-526.

Patterson argues Bolton Township must be a "local authority" under K.S.A. 2017 Supp. 8-2005 because K.S.A. 2017 Supp. 68-526(a) broadly grants townships "the general charge and supervision of all township roads." She construes K.S.A. 2017 Supp. 68-526(b), which was added to the statute in 2003, as merely "clarify[ing] who has the responsibility and authority to maintain traffic control devices along township roads" in those particular counties. See L. 2003, ch. 87, § 2. She also relies on *Finkbiner v. Clay County*, 238 Kan. 856, 714 P.2d 1380 (1986), for the proposition that subsection (a) imposed this duty on townships before the 2003 amendments.

The problem with Patterson's argument—at least in terms of traffic-control devices—is that she takes the phrase "general charge and supervision" out of context and ignores the specific provision imposing the particular obligation to "place and maintain traffic-control devices and guidance, warning and regulatory signs" on the townships

13

enumerated in subsection (b). Patterson's reading of subsection (a) simply cannot be reconciled with subsection (b).

As the panel correctly pointed out, the Legislature chose to specify only five counties' townships for the particular responsibility of placing and maintaining traffic-control devices and guidance, warning, and regulatory signs on their township roads. Its silence as to other counties indicates the legislative intent to exclude townships in those remaining counties. *Patterson*, 53 Kan. App. 2d at 483 (referring to the statutory interpretation canon *expressio uninus est exclusion alterius*, i.e., the inclusion of one thing implies the exclusion of another); see, e.g., *State v. Coman*, 294 Kan. 84, 93, 273 P.3d 701 (2012) (defining "sexually violent crime" to include two paragraphs of criminal sodomy statute means legislature intended to exclude a third paragraph); *Cole v. Mayans*, 276 Kan. 866, 878, 80 P.3d 384 (2003) (explaining that when an item is not included in a specific list, this court can presume the legislature intended to exclude the item); *In re W.H.*, 274 Kan. 813, 823, 57 P.3d 1 (2002) (consecutive sentences not permitted for juvenile criminal adjudications because legislature omitted such authority from juvenile code but conferred it with respect to nonjuvenile convictions); *State v. Favela*, 259 Kan. 215, 235, 911 P.2d 792 (1996) (defendant's youth could not be mitigating factor for sentencing purposes because legislature omitted it from nonexclusive list but specifically included victim's youth in nonexclusive list of aggravating factors).

In addition, if we were to read K.S.A. 2017 Supp. 68-526(a) to impose a duty on every township to install necessary traffic-control devices on township roads, subsection (b) becomes meaningless because the duty specifically imposed in that subsection would already exist under subsection (a). We generally presume "the legislature does not intend to enact useless or meaningless legislation." *Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas*, 268 Kan. 121, Syl. ¶ 5, 992 P.2d 800 (1999).

14

K.S.A. 2017 Supp. 8-2005 leads to a similar construction. Even if the reference to "'[l]ocal authorities'" in subsection (a) could be read in isolation to include townships by disregarding the definition in K.S.A. 8-1432, K.S.A. 2017 Supp. 8-2005(c) specifies that only those townships in the five listed counties have the statutorily granted authority over traffic-control devices. Once again, if all townships were "local authorities" for subsection (a) purposes, there would be no need for subsection (c).

Similarly, the *Finkbiner* decision on which Patterson relies for her construction of K.S.A. 2017 Supp. 68-526(a) and K.S.A. 2017 Supp. 8-2005 cannot bear the weight she tries to rest upon it. The *Finkbiner* court held a county was entitled to summary judgment on a negligent signage claim arising from an automobile accident on a township road. The court reasoned:

> "*Since all parties agree that the Township alone was responsible for the township road*, the County cannot be liable for failure to place signs warning of a dead end on the township road. A township, having the exclusive care and control of a street or road, has a duty to maintain that road or street for the safe passage of persons and property. Other governmental entities cannot be held liable for failure to maintain that road safely. *City of Eudora v. Miller,* 30 Kan. 494, 2 Pac. 685 (1883). Therefore, it is a question only as to the Township whether, under the totality of the circumstances, it should have placed a warning sign." (Emphasis added.) *Finkbiner*, 238 Kan. at 861.

What is obvious from this passage is that the *Finkbiner* court expressly premised its ruling on the parties' agreement that the township was responsible for the township road. Notably, the township was a party to the appeal. The court's decision does not reflect that the township's duties were based on judicial analysis of statutory provisions in effect at the time. See K.S.A. 2017 Supp. 8-2005. "The doctrine of stare decisis maintains that once a point of law has been established by a court, it will generally be followed by the same court . . . when the same legal issue is raised. A court of last resort will follow

15

that rule of law unless clearly convinced [that rule] was originally erroneous . . . ." *Miller v. Johnson*, 295 Kan. 636, 653, 289 P.3d 1098 (2012). But in this instance, it is obvious *Finkbiner* did not establish a rule of law that townships owe a duty to install traffic-control devices on township roads. It simply accepted the parties' agreement. And even if it were to be read as finding such a statutory obligation, we are clearly convinced that reading would have been incorrect when *Finkbiner* was decided—as previously explained.

In sum, K.S.A. 2017 Supp. 68-526 does not impose a general duty on all townships to install traffic-control devices. A township is not a "local authority" because it lacks the power to adopt ordinances or regulations governing vehicular traffic. And in the present case, the Township is not located within one of the five counties where townships are required to install traffic-control devices. We hold the Township did not owe Jason and Cortney a duty with respect to the placement of traffic-control devices as claimed by Patterson. The Township was entitled to summary judgment.

THE COUNTY OWED NO DUTY TO CONDUCT AN ENGINEERING STUDY

Patterson claims the County was negligent in failing to conduct an engineering study to determine whether additional traffic-control devices were necessary for the County's paved portion of the roadway. As previously discussed, to rely on a statute to establish a duty of care, a plaintiff must fully satisfy the duty requirements of a negligence action, including the requirement that the defendant owe the duty to the plaintiff. *Shirley*, 297 Kan. at 895. Again, Patterson fails to cite a statute imposing a duty to conduct an engineering study.

At the outset, we note this claim evolved over the litigation's course. In the district court, Patterson's experts simply noted the County had failed to conduct an engineering

16

study to determine if any additional warning signs were required under the MUTCD. See K.S.A. 8-2003 (secretary of transportation required to adopt a manual and specifications for a uniform system of traffic-control devices within Kansas); K.S.A. 2017 Supp. 8-2005(a) (imposing duty on local authorities to place and maintain traffic-control devices as deemed necessary in accordance with MUTCD). Patterson then seized on the lack of an engineering study in trying to defeat the County's discretionary immunity claim by arguing no discretion was exercised because no study was conducted. In other words, Patterson claimed the County's signage decisions were not discretionary functions because it never had the information necessary to exercise discretion.

In reply, the County argued the MUTCD only required an engineering study after it decided to place additional signs, warnings, or traffic control devices on 322nd Road. It further argued that even if it had completed an engineering study, whatever additional signage might have been called for would not have been mandatory under the MUTCD. Selenke included in the pretrial order the failure to conduct an engineering study as an independent basis for finding the County was negligent, but Patterson did not. The district court noted this in its order but did not directly resolve the question or treat it as a separate claim.

On appeal, the panel addressed Patterson's engineering study argument as a separate allegation of negligence, analyzing whether the County was under a duty to conduct one. The panel held, "[W]e find no language in the MUTCD to support Patterson's contention that the County has an unlimited duty to conduct an engineering study on every road within its territorial borders for purposes of considering placement of a warning sign." *Patterson*, 53 Kan. App. 2d at 452. On review, we agree with the panel as to the obligations the MUTCD imposes on the County regarding an engineering study.

17

The MUTCD defines a "warning sign" as a "sign that gives notice to road users of a situation that might not be readily apparent." U.S. Dep't of Transportation, Federal Highway Administration, Manual on Uniform Traffic Control Devices for Streets and Highways, § 1A.13.252 (2009 ed.). Patterson contends the County's duty to conduct an engineering study for placement of warning signs arises from MUTCD § 2C.02, which states "[t]he use of warning signs shall be based on an engineering study or on engineering judgment." She then notes the MUTCD defines "engineering study" as:

> "[T]he comprehensive analysis and evaluation of available pertinent information, and the application of appropriate principles, provisions, and practices as contained in this Manual and other sources, for the purpose of deciding upon the applicability, design, operation, or installation of a traffic control device. An engineering study shall be performed by an engineer, or by an individual working under the supervision of an engineer, through the application of procedures and criteria established by an engineer. An engineering study shall be documented." MUTCD § 1A.13.65.

Patterson contends an engineering study could be "as simple as a documented drive down each road in the County's jurisdiction to evaluate the road conditions and resultant need for signage, or a major study depending on the type of road and road conditions." She then continues, "Far from an undue burden on the County, engineering studies constitute a baseline duty to satisfy the County's responsibilities under the MUTCD."

But Patterson overreads the MUTCD and the County's obligations under it. MUTCD § 2C.02 does not obligate a jurisdiction to initially or periodically survey a jurisdiction's entire roadway system to decide whether to install traffic-control devices or add new ones in particular locations. See *Woodworth v. State ex rel. Id. Transp. Bd.*, 154 Idaho 362, 367, 298 P.3d 1066 (2013) (holding the statement in the manual—"'[t]he use of warning signs shall be based on an engineering study or on engineering judgment'"—

18

does not establish any duty to conduct an engineering study, and "it merely requires that an engineering study or engineering judgment be used in the event warning signs are erected"). We hold the MUTCD did not require the County to conduct the engineering study as Patterson asserts.

THE COUNTY'S KANSAS TORT CLAIMS ACT IMMUNITY

The County is a "governmental entity," so Patterson's negligence claims are subject to the KTCA. See K.S.A. 75-6101 (applicable claims); K.S.A. 2017 Supp. 75-6102(a)-(c). Under the KTCA, liability is the rule and immunity is the exception. A governmental entity is liable if a private person could be liable under the same circumstances and no statutory exception to liability applies. *Soto v. City of Bonner Springs*, 291 Kan. 73, 78-79, 238 P.3d 278 (2010). The burden is on the governmental entity to establish an exception applies. 291 Kan. at 78.

When all material facts are uncontroverted, "whether an exception of the KTCA applies to grant immunity to a governmental entity is a question of law." *Keiswetter v. State*, 304 Kan. 362, 366, 373 P.3d 803 (2016). We look first to the statutory schemes concerning both the KTCA and the County's responsibilities over traffic-control devices and roadway safety with an eye toward determining whether there are material facts in dispute. The district court and the panel differed about this.

The district court ruled that because the signage at issue was not mandatory, potential liability or applicability of discretionary immunity could be based only on a review of the surrounding facts and circumstances. Accordingly, the court viewed it was necessary for a jury to resolve the factual questions "unless placement of the optional sign could not have been the legal cause of the plaintiff's injury." But the panel saw the analysis as being controlled by the MUTCD. *Patterson*, 53 Kan. App. 2d at 460-61. It

19

then described and adopted a two-part test taken from two United States Supreme Court decisions: *Berkovitz v. United States*, 486 U.S. 531, 108 S. Ct. 1954, 100 L. Ed. 2d 531 (1988), and *United States v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). *Patterson*, 53 Kan. App. 2d at 461.

Under the panel's ambitiously developed analysis, to have discretionary function immunity, the County needed to establish that "its decision to place (or not place) the warning signs (1) involves an element of individual judgment or choice and (2) is the kind of function susceptible to public policy analysis." 53 Kan. App. 2d at 461. The panel held the County met this burden. 53 Kan. App. 2d at 470.

As to its first step, the panel reviewed the MUTCD and held, "[T]here is no standard within the MUTCD that requires a governmental entity to follow any specific course of action related to the placement of an advisory speed plaque, a Dead End sign, or a No Outlet sign." 53 Kan. App. 2d at 463. Because of that, it continued, "the County's decision to place (or not place) the warning signs as alleged here involves an element of individual judgment or choice." 53 Kan. App. 2d at 463.

As to the second step, the panel explained its analysis is "meant to draw a line of distinction between a discretionary function the exception was designed to shield and an ordinary tort that is only tangentially related to regulatory policy." 53 Kan. App. 2d at 463. The panel then held that because the MUTCD had the force of law under K.S.A. 8-2003 and K.S.A. 2015 Supp. 8-2005, the County enjoyed a presumption that its decisions were based on public policy concerns. Patterson, the panel further held, would have to overcome this presumption and show the County's decision regarding whether to place a warning sign was not the kind of conduct that could be said to be based on public policy considerations. 53 Kan. App. 2d at 463-64.

20

In that context, the panel considered Patterson's argument that a "totality of the circumstances" analysis required a jury to determine the dangerous conditions alleged to have caused the harm in order to decide whether discretionary function immunity applied. 53 Kan. App. 2d at 464-66. It reviewed cases relied on by Patterson and concluded the "totality of the circumstances" referenced in those cases simply equated to reliance on the MUTCD. 53 Kan. App. 2d at 466 ("Because the [*Carpenter v. Johnson*, 231 Kan. 783, 649 P.2d 400 (1982)] court relied on MUTCD-established guidelines requiring placement of warning signs under certain conditions, the phrase 'totality of the circumstances' in the court's holding refers to the applicable provisions of the MUTCD."). The panel further determined Patterson's reliance on *Finkbiner*, 238 Kan. 856, was misplaced. 53 Kan. App. 2d at 467. It noted the then-existing language from the 1978 edition of the MUTCD requiring signs where hazards were not self-evident was deleted from the manual in 2000 and not replaced with any comparable requirement to adhere to any particular directive in placing traffic warning signs. 53 Kan. App. 2d at 467-69.

With the panel's analysis and parties' arguments in mind, we begin with the applicable statutes. Recall that the negligent signage claims against the County are its: (1) failure to post an advisory speed plaque of 5 miles per hour underneath the existing "Pavement Ends" sign; and (2) failure to post "Dead End" or "No Outlet" signs on its portion of 322nd Road.

The relevant KTCA provisions state:

> "A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:
>
> . . . .

"(e) *any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty* on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved . . . [or]

. . . .

"(h) the malfunction, destruction or unauthorized removal of any traffic or road sign, signal or warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such malfunction, destruction or removal. *Nothing herein shall give rise to liability arising from the act or omission of any governmental entity in placing or removing any of the above signs, signals or warning devices when such placement or removal is the result of a discretionary act of the governmental entity . . . .*

. . . .

"*The enumeration of exceptions to liability in this section shall not be construed to be exclusive nor as legislative intent to waive immunity from liability in the performance or failure to perform any other act or function of a discretionary nature.*" (Emphases added.) K.S.A. 2017 Supp. 75-6104.

The language provided in K.S.A. 2017 Supp. 75-6104(h) plainly and unambiguously bifurcates liability for traffic signs into two areas: (i) maintenance; and (ii) placement or removal of signs. See *Carpenter v. Johnson*, 231 Kan. 783, 786, 649 P.2d 400 (1982). When a negligence claim is predicated on failure to place a traffic-control device "the discretionary element in that decision is crucial" to determining whether the governmental entity can be liable. 231 Kan. at 786. Accordingly, failure to place a traffic-control device is not per se a discretionary function; rather, the "test is whether the judgments of the government employee are of the nature and quality which

22

the legislature intended to put beyond judicial review." 231 Kan. at 788. This is how the MUTCD comes into play.

All traffic-control devices placed and maintained by local authorities must conform to the MUTCD. K.S.A. 2017 Supp. 8-2005(a). And, as discussed, the term "local authorities" includes counties. K.S.A. 8-1432. Therefore, the County had a statutory duty to comply with the MUTCD, so its provisions control whether the County is entitled to discretionary function immunity for a signage decision. See *Carpenter*, 231 Kan. at 787-88 (determining whether immunity applied based on review of relevant MUTCD provisions); *Kastendieck v. Board of County Com'rs*, 934 F. Supp. 387, 391 (D. Kan. 1996) ("The [discretionary function] exception applies only when no mandatory guidelines exist to govern the defendants' conduct.").

*Carpenter* illustrates how the MUTCD controls such situations. In *Carpenter*, an automobile passenger alleged governmental entities negligently failed to mark a curve with warning signs. The district court granted summary judgment to the entities, reasoning that "conformity with the [MUTCD] becomes important only after the decision to erect a sign is made." 231 Kan. at 787. The *Carpenter* court reversed, holding the government's failure to use a warning sign was not per se discretionary in that instance. 231 Kan. at 790. After noting the MUTCD provided engineers "rather detailed recommendations in placement of warning signs," the court stated "[t]he question becomes whether those employees are exercising discretion within the meaning of the KTCA or merely exercising professional judgment within established guidelines." 231 Kan. at 788.

Relevant to the negligence allegation, the *Carpenter* court noted the applicable MUTCD provisions at that time declared warning signs were "essential . . . where hazards are not self-evident," and that the "[c]urve sign . . . is intended

23

for use where engineering investigations . . . and operating conditions show the recommended speed on the curve to be in the range between 30 and 60 miles per hour and equal to or less than the speed limit established . . . for that section of the highway." 231 Kan. at 788. The court concluded the guidelines' application involved "professional judgment rather than governmental discretion." 231 Kan. at 789. It held summary judgment on the basis of discretionary immunity was not appropriate under the circumstances because "[w]hether or not the placement of a warning sign on the particular curve in controversy . . . was discretionary or mandatory depend[ed] upon the totality of the circumstances involved and [could not] be determined as a matter of law without regard thereto." (Emphasis added.) 231 Kan. at 790.

In short, under the guidelines at issue in *Carpenter*, roadway conditions, i.e., where hazards were not self-evident, prompted the signing authority to consider engineering judgment when determining whether a warning sign was necessary. That situation is not present in Patterson's case. The MUTCD provisions addressing the signs Patterson claims the County negligently failed to employ—advisory speed plaques and "Dead End" or "No Outlet" signs—lack the same level of mandate or detailed guidance for deciding when these signs are necessary.

Stated differently, Patterson fails to advance facts, such as road conditions, that trigger an affirmative obligation for the County to apply MUTCD criteria to determine whether to use the traffic control devices in question at the designated locations. Or, put another way, under the applicable MUTCD guidelines the County was free not to consider whether these signs should be erected at the specified locations along 322nd Road under the facts alleged. This is the hallmark of a discretionary function when the negligence alleged is not erecting a particular traffic-control device. See *Toumberlin v. Haas*, 236 Kan. 138, 142, 689 P.2d 808 (1984) (upholding judgment as a matter of law

24

that county not liable for failing to install signs at intersection when plaintiff failed to produce "engineering testimony that the placement of any type of sign at the intersection was warranted or required *under the terms of the [MUTCD]*" or "engineering studies or accident history . . . which would have justified any type of sign" [emphasis added]). A closer review of the MUTCD and its terminology is in order.

The applicable MUTCD "contains Standards, Guidance, and Options for the signing of all types of highways, and private roads open to public travel. The functions of signs are to provide regulations, warnings, and guidance information for road users." MUTCD § 2A.01.

A "Standard" is "a statement of required, mandatory, or specifically prohibitive practice regarding a traffic control device. . . . Standard statements are sometimes modified by Options. Standard statements shall not be modified or compromised based on engineering judgment or engineering study." MUTCD § 1A.13.A. A "Guidance" is "a statement of recommended, but not mandatory, practice in typical situations, with deviations allowed if engineering judgment or engineering study indicates the deviation to be appropriate. . . . Guidance statements are sometimes modified by Options." MUTCD § 1A.13.B. Particularly relevant in Patterson's cases, an "Option" is "a statement or practice that is a permissive condition and carries no requirement or recommendation. Option statements sometimes contain allowable modifications to a Standard or Guidance statement." MUTCD § 1A.13.C.

Under the facts alleged by Patterson, the MUTCD classifies the use of the warning devices at issue here as "Option[s]," which are defined as permissive practices and not requirements or recommendations. MUTCD § 1A.13.C; see also *Patterson*, 53 Kan. App. 2d at 462 ("The designation of the County's portion of 322nd Road as nonlow volume or low volume is irrelevant for our purposes, however, because both sections of the

25

MUTCD each similarly provide that the use of advisory speed plaques and Dead End or No Outlet signs is merely an Option.").

A warning sign "give[s] notice of a situation that might not be readily apparent." MUTCD § 2A.05.B; see MUTCD § 1A.13.252. More specifically,

> "Warning signs call attention to unexpected conditions on or adjacent to a highway, street, or private roads open to public travel and to situations that might not be readily apparent to road users. Warning signs alert road users to conditions that might call for a reduction of speed or an action in the interest of safety and efficient traffic operations." MUTCD § 2C.01.

The MUTCD's warning sign provisions also address the use of "object markers," which are devices "used to mark obstructions within or adjacent to the roadway" and "to mark the end of a roadway." MUTCD § 2C.63; see also MUTCD § 1A.13.63 (defining "End-of-Roadway Marker"); MUTCD § 1A.13.125 (defining "Object Marker"). And as discussed above, the MUTCD provides that "[t]he use of warning signs shall be based on an engineering study or on engineering judgment," but further advises "*[t]he use of warning signs should be kept to a minimum as the unnecessary use of warning signs tends to breed disrespect for all signs*." MUTCD § 2C.02. While MUTCD Part 2, Chapter 2C addresses "most of the conditions that are likely to be encountered," it also provides "[a]dditional warning signs for low-volume roads" in Part 5. MUTCD § 2C.02; see MUTCD § 5A.01 ("A low-volume road" is generally "a facility lying outside of built-up areas of cities, towns, and communities, and it shall have a traffic volume of less than 400 [average annual daily traffic]" and is "classified either as paved or unpaved.").

As to advisory speed plaques and "Dead End" or "No Outlet" signs, the MUTCD provides,

26

"Section 2C.08 Advisory Speed Plaque . . .

"Option:

"The Advisory Speed . . . plaque  . . . *may be used* to supplement any warning sign to indicate the advisory speed for a condition.

"Standard:

"The use of the Advisory Speed plaque for horizontal curves shall be [as prescribed.] The Advisory Speed plaque shall also be used where an engineering study indicates a need to advise the road users of the advisory speed for other roadway conditions.

. . . .

"The Advisory Speed plaque shall only be used to supplement a warning sign and shall not be installed as a separate sign or installation." (Emphasis added.)

In addition, on a low-volume road, an advisory speed plaque "*may be* mounted below a warning sign when the condition requires a reduced speed." (Emphasis added.) MUTCD § 5C.10.

"Section 2C.26 DEAD END/NO OUTLET Signs . . .

"Option:

"The DEAD END . . . sign . . . *may be used* at the entrance of a single road or street that terminates in a dead end or cul-de-sac. The NO OUTLET . . . sign . . . *may be used* at the entrance to a road or road network from which there is no other exit.

27

"DEAD END . . . or NO OUTLET . . . signs . . . *may be used* in combination with Street Name . . . signs . . . to warn turning traffic that the cross street ends in the direction indicated by the arrow.

"At locations where the cross street does not have a name, the [DEAD END or NO OUTLET] signs *may be used* alone in place of a street name sign.

"Standard:

. . . .

"When the [DEAD END or NO OUTLET] sign is used, the sign shall be posted as near as practical to the entry point or at a sufficient advance distance to permit the road user to avoid the dead end or no outlet condition by turning at the nearest intersecting street." (Emphases added.)

As can be seen, the MUTCD does not contain any detailed guidelines specifying circumstances as are alleged to exist in this case under which these signs might be required as Patterson claims. See *Kastendieck*, 934 F. Supp. at 392 (ruling discretionary function immunity applied to county's application of MUTCD guidelines on distance between curve delineators, but noting court was "troubled" by decisions indicating once government decides to perform a discretionary act, ministerial acts or professional judgments within course of doing so are not entitled to immunity); Westerbeke, *The Immunity Provisions in the Kansas Tort Claims Act: The First Twenty-Five Years*, 52 Kan. L. Rev. 939, 963-64 (2004) (asserting whether signing decision requires professional judgment turns on whether MUTCD provides sufficient guidelines).

The district court correctly saw there were no facts alleged under which the MUTCD would have required the County to install an advisory speed plaque, "Dead End" sign, or "No Outlet" sign prior to Cortney and Jason's accident. Similarly, there

28

were no facts alleged under which the MUTCD would have required the County to seek engineering judgment as to whether such a sign was necessary. But the district court erred in holding that a determination of discretionary immunity applicability could be made only upon a jury's factual finding as to the surrounding facts and circumstances, unless placement of the optional sign could be shown to not have been the legal cause for the injury. Under this case's facts, the MUTCD answered the legal question and that was enough to grant the County summary judgment.

Likewise, the panel's "*Berkovitz-Gaubert*" test overly complicates application of discretionary function immunity for road signage decisions. The MUTCD has the force of law and reflects public policy in Kansas. So when the MUTCD leaves to the signing authority an unqualified decision whether to provide a particular sign at a particular place, that decision or lack thereof necessarily is one the discretionary function exception is designed to shield. Whether the "*Berkovitz-Gaubert*" test has utility in other contexts, we leave for another case. Once again, the MUTCD answered the dispositive legal question posed.

Patterson did not come forward with facts under which the MUTCD would have mandated an advisory speed plaque, a "Dead End" sign, or a "No Outlet" sign on 322nd Road, or triggered a need to seek out professional engineering judgment. On the summary judgment record, the County had the discretion not to consider whether to install these signs. Therefore, the KTCA shields the County from liability on all of Patterson's claims. The County was entitled to summary judgment.

These holdings resolve the claims against the County, so it is unnecessary to consider the lower courts' analysis of the recreational use and inspection immunity defenses affirmatively raised by the County against Patterson's claims as alternative statutory protections from liability.