NOT DESIGNATED FOR PUBLICATION

No. 124,347

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

AUBREY ILLIG,
*Appellant*,

v.

RENEE BELIEU, M.D., and KANSAS CITY WOMEN'S CLINIC,
*Appellees*.

MEMORANDUM OPINION

Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed October 14, 2022. Affirmed.

*Michelle Illig*, of Law Office of Michelle Illig, of Overland Park, for appellant.

*Adam S. Davis*, *Diana L. Beckman*, and *Thomas A. Rottinghaus*, of Wagstaff & Cartmell, LLP, of Kansas City, Missouri, for appellees.

Before CLINE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM:   Aubrey Illig sued Dr. Renee BeLieu and the Kansas City Women's Clinic (KCWC) for personal injury damages allegedly resulting from their medical negligence in ordering and administering a second round of Gardasil vaccines which caused her personal injuries. The district court entered summary judgment in favor of Dr. BeLieu and KCWC, collectively appellees, because Illig failed to identify an expert witness to support her claims. Illig appeals, claiming the district court erred in granting appellees summary judgment because she did not need an expert witness to support her claims and a material fact dispute existed.

1

FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2019, Illig sued appellees for damages and alleged they were negligent in their "medical care, treatment, and management of [Illig]" because they ordered and administered a second round of Gardasil vaccines for Illig after she had already completed a full round of the Gardasil vaccine. A full dose of Gardasil is administered through a series of either two or three vaccines, depending on the patient's age. Illig alleged that appellees administered her first Gardasil shot in January 2014 and directed Illig to obtain her second and third shots. Illig alleged she followed appellees' instructions and obtained her second and third Gardasil shots from a different clinic while away at college, and thus completed her first full round of the Gardasil vaccine in 2014. It is unclear from the record whether Dr. BeLieu and the KCWC ever received records confirming that Illig received her second and third doses of Gardasil.

Illig claimed she developed a "serious and chronic autoimmune disorder" after completing the first full round of Gardasil vaccinations. She claimed that after some time her disorder was improving, until Dr. BeLieu "recklessly ordered [Illig] a second round of Gardasil" in July 2016. Illig said that she informed Dr. BeLieu she had received the full Gardasil inoculation in 2014, consisting of three separate shots, but the KCWC lost Illig's previous vaccination records during a software system migration. Illig alleged the appellees negligently administered another three Gardasil shots over the span of 2016 and 2017, constituting her second full Gardasil inoculation. Illig asserted that appellees' negligence in administering a second full Gardasil inoculation, consisting of three more shots than required, caused her "severe and chronic autoimmune condition" to resurface and worsen. Illig claims that those injuries would not have occurred had the appellees "exercised appropriate medical care, treatment and management and not deviated from the accepted standards of medical care."

Illig added factual allegations in her May 10, 2019 amended petition, but did not amend her legal allegations. The amended petition added the following factual statements:

- The Centers for Disease Control and Prevention (CDC) recommend no more than three Gardasil shots;
- the defendants failed to give Illig the Vaccine Information Sheet (VIS) as required by the National Childhood Vaccine Injury Act (NCVIA) prior to administering the Gardasil shots; and
- the second round of Gardasil "exacerbated [Illig's] autoimmune condition" and caused her "systemic immunological harm."

Although Illig never identified in her petitions the autoimmune condition she alleged became exacerbated, at a prehearing conference her counsel informed the district court that the condition was ulcerative colitis.

The district court issued an amended case management order on November 9, 2020, which identified the trial date as November 15, 2021, and other important procedural dates—including the discovery and expert witness deadlines. It specifically stated that "[a]ny party with an affirmative claim for damages must designate an expert witness on or before the 1st day of March, 2021." During litigation, the parties agreed to extend the expert witness deadline until March 17, 2021. Illig failed to designate an expert witness by the extended deadline, and failed to request an additional extension to allow for a later designation.

Shortly after the expiration of the expert witness deadline, appellees filed a joint motion for summary judgment and argued that because Illig failed to identify expert witnesses, she could not establish the standard of care, causation, or damages to support her claims. In her response, Illig did not controvert any of the appellees' statement of

3

facts, but argued that her claims fell under the common knowledge exception, such that they did not require testimony from medical experts.

After a hearing, the court found that Illig failed to controvert appellees' facts set forth in their motion for summary judgment, and accepted them as the court's findings. The district court found that Illig's medical malpractice claims required expert testimony to establish causation, breach, and damages because the common knowledge exception did not apply. Because Illig failed to identify any expert witnesses or seek an extension of time to do so, the district court granted appellees' summary judgment motion.

DISCUSSION

Illig raises five issues on appeal, claiming the district court erred in granting summary judgment for appellees because:

(1) The common knowledge exception applied to her claims;
(2) the district court failed to recognize that Illig's potential lay witnesses or appellees' expert witnesses could testify to any material issues;
(3) she asserted a general negligence claim against the KCWC not requiring expert testimony;
(4) her informed consent claim did not require expert testimony; and
(5) the district court abused its discretion by ignoring a material, controverted fact.

*The Standard of Review*

The district court should grant the moving party summary judgment only when all the pleadings, discovery, and records show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

4

*Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018). The district court must resolve all facts and reasonable inferences "in favor of the party against whom the ruling is sought." 307 Kan. at 621. Here, that means the district court should have reviewed the facts in favor of Illig's claims. But Illig cannot merely rely on the allegations in her pleadings in opposing the appellees' motion for summary judgment. Illig needed to "come forward with evidence to establish a dispute as to a material fact." See 307 Kan. at 621.

The district court must deny summary judgment if reasonable minds could differ as to the conclusions drawn from the evidence. *Stechschulte v. Jennings*, 297 Kan. 2, 14, 298 P.3d 1083 (2013). Ordinarily, summary judgment will not be granted when, as is the case here, discovery is incomplete—unless the facts pertinent to the material issues are not controverted. See *Halley v. Barnabe*, 271 Kan. 652, 657, 24 P.3d 140 (2001). Appellate courts review a district court's grant of summary judgment de novo, looking at the facts and law anew with no deference to the district court's decision. *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 982, 453 P.3d 304 (2019); *Acord v. Porter*, 58 Kan. App. 2d 747, 756, 475 P.3d 665 (2020).

A. *Illig failed to set forth disputed facts and cannot rely on potential testimony to avoid summary judgment.*

Appellees' motion for summary judgment contained just 11 undisputed material facts that they allege, if true, entitled them to judgment as a matter of law. Illig, in her opposition, disputed none of those material facts. She merely reasserted her allegations and claimed—with no legal support—that the CDC immunization guidelines established the standard of care. On appeal, she does not oppose appellees' factual assertions with contrary facts, but apparently claims that she should be allowed to oppose them at trial. However, a party opposing a motion for summary judgment "may not rely merely on

allegations or denials in its own pleading," but must "set out specific facts showing a genuine issue for trial." K.S.A. 2021 Supp. 60-256(e)(2).

Illig argues that "the court failed to recognize that various doctors, including [appellees'] expert witnesses, could potentially testify to issues, including causation." Illig contends that because the time for discovery had not expired and she had identified "potential witnesses" that could speak to the standard of care, the district court improperly required her to identify her own expert witnesses to support her claims.

Contrary to Illig's arguments, a party cannot avoid summary judgment based on the hope that facts will emerge through later discovery or trial that support their claims. Mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013). If a party requires additional discovery to defend against a motion for summary judgment, that party must seek a continuance to obtain that discovery. See K.S.A. 2021 Supp. 60-256(f); *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 966, 186 P.3d 829 (2008).

Illig also contends that the district court abused its discretion by ignoring a material controverted point when it accepted appellees' statement of facts as in their summary judgment motion. A court abuses its discretion when its decision is arbitrary, fanciful, unreasonable, or if it stems from an error of law or fact. See *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). Because Illig failed to controvert appellees' asserted factual statements, the district court adopted appellees' statement of facts as its own.

> "In reviewing the response filed by [Illig] to the motion for summary judgment, I did not see any separately numbered paragraphs controverting or admitting to any of the alleged facts filed in the petition—I'm sorry, in the motion for summary judgment.

Accordingly, under my required findings of fact section, I find that the facts as pled by [appellees] are uncontroverted and accepted as this Court's finding[s] of fact."

Illig now claims that statements in her medical records conflict with appellees' summary judgment statement of facts—apparently challenging whether Dr. BeLieu intended to give Illig Gardasil shots in excess of the first full round. But Illig failed to controvert this point in her response to the motion for summary judgment or during the summary judgment hearing. Based on the information available to the district court, it was reasonable and not an abuse of discretion for it to find that Illig did not controvert appellees' statement of facts and adopt those as its own.

Moreover, the district court properly set forth a March 1, 2021 expert witness disclosure deadline that, although the parties agreed to extend at least once, Illig failed to observe. See K.S.A. 2021 Supp. 60-216(d) (permitting district courts to control actions within their court). The district court held that summary judgment for appellees was appropriate as a matter of law because Illig's claims required expert witness testimony, but she decided to proceed without it. See *Crooks v. Greene*, 12 Kan. App. 2d 62, 736 P.2d 78 (1987) (relied on by the district court in granting summary judgment). In *Crooks*, a panel of this court upheld the district court's grant of summary judgment against a patient claiming medical malpractice because the patient failed to identify expert witnesses to establish causation. 12 Kan. App. 2d at 63-66.

Rather than supply disputed facts, Illig argued only, and inaccurately, that the common knowledge exception applied, making expert witness testimony unnecessary. The district court did not err in accepting appellees' uncontroverted facts as the findings of the court.

B. *Illig's medical malpractice claims required expert testimony.*

To succeed on a medical malpractice claim and recover damages, a plaintiff must show that (1) the medical provider owed the patient a duty of care, (2) the provider breached that duty or deviated from the standard of care, (3) the patient was injured, and (4) the provider's breach proximately caused the patient's injury. See *Burnette v. Eubanks*, 308 Kan. 838, 842, 425 P.3d 343 (2018). Expert testimony is ordinarily required to establish a medical provider breached the standard of care and to establish causation between that breach and the alleged injury. See *Hare v. Wendler*, 263 Kan. 434, 440, 949 P.2d 1141 (1997); *Bacon v. Mercy Hosp. of Ft. Scott*, 243 Kan. 303, 307, 756 P.2d 416 (1988).

Illig accurately asserts that, while expert witness testimony is typically required in medical malpractice cases, an exception exists permitting the plaintiff to pursue claims without an expert. When "what is alleged to have occurred in the diagnosis, treatment, and care of a patient is so obviously lacking in reasonable care and the results are so bad that the lack of reasonable care would be apparent to and within the common knowledge and experience of mankind generally," expert witness testimony is not required. *Hare*, 263 Kan. at 442. This exception is known as the common knowledge exception—and its application is "extremely limited"—typically applied in cases where a foreign object was left inside a patient during a surgery, or when a surgeon mistakenly operates on the wrong body part. See *Munoz v. Clark*, 41 Kan. App. 2d 56, 62-63, 199 P.3d 1283 (2009); see, e.g., *Rule v. Cheeseman, Executrix*, 181 Kan. 957, 962-63, 317 P.2d 472 (1957) (applying the common knowledge exception when the physician failed to remove gauze from a patient's abdomen after surgery); *Bernsden v. Johnson*, 174 Kan. 230, 238, 255 P.2d 1033 (1953) (applying the common knowledge exception when the physician left a metal tongue suppressor in the patient's throat for an extended period of time); *Schwartz v. Abay*, 26 Kan. App. 2d 707, 712, 995 P.2d 878 (1999) (applying the common

8

knowledge exception when the surgeon removed a significant portion of the wrong vertebral disc).

Illig contends that she was not required to put forth expert witness testimony to establish the standard of care for the administration of the Gardasil vaccine or maintenance of medical records because both standards of care are within the common knowledge of the public. Illig asserts that this common knowledge exception should apply because the CDC vaccination recommendations provide that a patient should only receive two or three Gardasil shots and establishes the standard of care. Additionally, Illig asserts—without any legal authority—that the jury does not need a medical expert to see that the KCWC deviated from the standard of care when it lost her vaccination record, and proximately caused her injuries by administering too many Gardasil shots. She essentially argues a medical clinic's administrative duties to protect patient files are within the common knowledge of the jury, and thus no expert testimony about standards of medical record maintenance is required.

Even assuming this court accepts Illig's argument that expert witness testimony is not required to establish appellees' standard of care and its breach of that standard, Illig must still prove causation. Illig's petition, amended petition, brief, and reply brief all fail to explain how appellees' negligent actions proximately caused exacerbation of her existing ulcerative colitis. Illig merely alleged that after receiving the Gardasil shots that exceeded the CDC's recommended dosage, she "experienced systemic immunological harm due to further aggravation and elevation of her immune system," and that her "autoimmune condition worsened as a direct result of [appellees'] negligent acts." However, Illig never explains how the standard of care for Gardasil vaccines or the cause of her alleged injuries fall within the common knowledge and experience of humanity generally. This court is unaware of any generally accepted knowledge of the cause of ulcerative colitis or what causes ulcerative colitis to worsen or flare up. "Even when there

9

is no factual dispute about what the treating physician did or failed to do, questions of causation in medical malpractice cases are often complex." *Hare*, 263 Kan. at 441.

Contrary to Illig's assertions, this court has required expert testimony on causation even when there was a clear medical error—which this court does not presume here. See, e.g., *St. Francis Regional Med. Center, Inc. v. Hale*, 12 Kan. App. 2d 614, 752 P.2d 129 (1988). In *Hale*, a panel of this court affirmed the district court's grant of summary judgment on a medical malpractice claim where medical providers left a clip in the patient's leg after surgery and the patient developed a staph infection in that same leg. Even though it was clear the clip should not have been left inside the patient's leg, the patient still needed expert testimony to establish causation. Although a lay person has common knowledge to know when a medical procedure did not proceed exactly as planned, the resulting injury—if any—is not necessarily within the common knowledge and experience of that lay person. 12 Kan. App. 2d at 620. The causation question here is far more complex than in *Hale*—it requires knowledge of the Gardasil vaccine, knowledge of the autoimmune condition known as ulcerative colitis, and knowledge of how additional Gardasil shots may impact or exacerbate ulcerative colitis, none of which are commonly known.

This court has found no caselaw to suggest that the potential medical consequences, if any, of receiving more than three doses of the Gardasil vaccine are within the common knowledge of the general public—unlike the potential consequences of having surgery on the wrong body part. Similarly, this court is unpersuaded that the general public possesses common knowledge of any of the causes of ulcerative colitis. Thus, Illig's medical malpractice claims required expert witness testimony, not only as to the standard of care, but also as to causation. See *Bacon*, 243 Kan. at 307. Illig failed to disclose any expert witnesses, even after receiving additional time, and did not request any further extension of time to identify an expert witness. Therefore, resolving all

10

disputed facts and inferences in favor of Illig, she is still unable to establish her medical malpractice claims against appellees without expert witness testimony.

C.  *Illig's general negligence and informed consent arguments were not raised below and this court declines to reach them on appeal.*

Illig next argues that her claims did not require expert witness testimony because (1) her claim against the KCWC was for general negligence, not medical malpractice and (2) her informed consent claim would not need expert testimony had the district court specifically addressed it below. Appellees urge this court to not reach Illig's arguments because they were not addressed below, but also argue that Illig would in fact need expert witness testimony to establish her negligence and informed consent claims.

Generally, issues not raised before the district court cannot be first raised on appeal. *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016). Exceptions exist permitting such an occurrence when consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

Illig failed to argue to the district court that her claims should be classified as general negligence and informed consent claims rather than medical malpractice. In fact, at a prehearing conference after inquiry from the district court, Illig explicitly said that the case was based in medical malpractice, "[a]nd that's the basis of our case, because it was negligence, it's medical malpractice." Illig did not oppose appellee's motion for summary judgment by claiming she was raising general negligence and informed consent claims rather than medical malpractice claims. Illig only argued that the common knowledge exception applied and she was not required to provide expert witness testimony to support her medical malpractice claims. Nor did Illig use the words "informed consent" anywhere in her petition or amended petition. In Illig's reply brief,

11

she acknowledges that she did not raise these issues below but argues—without citing legal support—that this court should reach them on appeal to prevent the denial of a fundamental right.

The decision to review an unpreserved claim under an exception to the general prohibition is a prudential one. Even if an exception applies, this court need not reach the unpreserved issue. *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020). The record clearly shows that Illig classified her claims as medical malpractice before the district court—thus not permitting the district court to consider her present argument—and she has cited no legal support for her conclusory contention that this court's failure to reach her claims would result in denial of a fundamental right. As a result, this court declines to reach Illig's new arguments brought for the first time on appeal.

CONCLUSION

Illig brought medical malpractice claims against her provider and medical clinic related to administration of more Gardasil shots than are required for full vaccination, but she failed to disclose expert witnesses to support her claims. Rather than disclosing experts, Illig proceeded on the theory that the common knowledge exception applied making expert testimony unnecessary. But the common knowledge exception does not apply to Illig's claims, and the district court did not err in granting summary judgment to appellees. Nor did it err in rejecting Illig's argument about potential future witnesses or by adopting appellees' uncontroverted statement of facts.

Affirmed.