NOT DESIGNATED FOR PUBLICATION

No. 120,110

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HUGH C. JENKINS, PATRICIA INGLISH,
and M. EARLENE JENKINS,
*Appellants*,

v.

GREEN VALLEY FARMS, L.L.C., KARL M. JENKINS,
ROBERT E. JENKINS, and ROBERTA KRIS JENKINS,
*Appellees*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; MARK ALAN WARD, judge. Opinion filed October 18, 2019. Affirmed.

*Blake Hudson*, of Hudson Law, L.L.C., of Fort Scott, for appellants.

*Nathan D. Leadstrom*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, and *Mark C. Owens*, of Mark C. Owens, P.A., of Overland Park, for appellees.

Before SCHROEDER, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: Hugh C. Jenkins, Patricia Inglish, and M. Earlene Jenkins ("Jenkins plaintiffs") appeal the district court's decision to grant summary judgment in favor of the defendants based on the statute of limitations and statute of repose. The Jenkins plaintiffs argue their claims accrued in 2016, not in 2003, 2004, or 2006, which the district court found were alternative start dates for the statute of limitations. Upon review of the record, we agree with the district court—based on the latest possible date in which the Jenkins

1

plaintiffs' claims could have arisen—2006—the statute of limitations has run on their claims. We affirm.

## FACTS

Various family members dispute their respective ownership interest in farmland sold in Bourbon County in 2016. A summary of the parties, their businesses, and some background history will outline how the Jenkins plaintiffs' claims came before this court.

The Jenkins plaintiffs appeal the district court's summary judgment in favor of Karl Jenkins, Robert (Bob) Jenkins, Roberta Kris Jenkins, and Green Valley Farms, L.L.C. ("Jenkins defendants"). Hugh and Patricia are siblings to Karl and Bob Jenkins. Bob is married to Roberta. W.K. Jenkins and M. Earlene Jenkins are the parents of Hugh, Patricia, Karl, Bob, and two other daughters not involved in this appeal. W.K. died in 2016; M. Earlene died in 2017.

The family owns several farm-related companies. The first is Green Acres, Inc. (GAI). Hugh served as GAI's president. W.K., Earlene, their children, and the children's spouses were GAI's only stockholders. GAI's only asset was the land in Bourbon County. The family referred to this land as the Kansas Ranch. GAI's sole business was to lease the Kansas Ranch back to Green Acres Farms (GAF)—the farming and ranching operation owned by W.K., Earlene, Karl, and Bob.

Next is Northern Farms, Inc. (Northern). Like GAI, all of the family members appear to be stockholders in Northern. Bob served as president of Northern.

Bob and Karl owned Double BK Enterprises, L.L.C. (Double BK). Bob and Karl also formed Green Valley Farms, L.L.C. (Green Valley). Green Valley is owned by Bob, Roberta, their children, Karl, his late wife's trust, and their children.

2

In 1998, Inter Chem Coal Company (Inter Chem) sought to enforce a personal judgment against W.K. in Bourbon County District Court. While the Inter Chem case was pending, the shareholders of GAI appointed Bob to act as a company representative if GAI became entangled in the lawsuit. As the case progressed, the shareholders terminated W.K.'s ability to represent GAI. By 2003, Hugh, Karl, and Bob served as the Board of Directors for GAI.

Inter Chem successfully moved to pierce the corporate veil of GAI and executed its judgment on the Kansas Ranch. The district court found Inter Chem could recover against GAF and its assets because W.K. was the partial owner of GAF. The district court also found GAI was an asset of GAF and GAF was the alter ego of GAI. As a result, the district court approved a sheriff's sale of the Kansas Ranch to satisfy the Inter Chem judgment.

Bob and Karl negotiated with Inter Chem to settle the dispute before the sheriff's sale. In October 2003, Inter Chem agreed to assign its judgment rights to foreclose on the property to Bob and Karl. In exchange, Bob and Karl agreed to pay Inter Chem $225,000. To complete the agreement, Bob and Karl deposited $225,000 into Double BK's business checking account. They wrote a check to the Law Firm of Nuss and Farmer, which served as the escrow agent for the agreement. Bob and Karl would later claim they took out a personal loan to pay the $225,000.

On December 19, 2003, the law firm paid Inter Chem, while Bob and Karl successfully bid on the Kansas Ranch at the sheriff's sale. They used Green Valley to bid on the land. Shortly after the auction, Bob and Karl formed Green Valley.

The district court later confirmed the sale and ordered the Sheriff to issue a sheriff's deed to Green Valley on the Kansas Ranch subject to the one-year statutory redemption period. No timely redemption occurred.

In 2004, Karl and Bob began operating the Kansas Ranch through Double BK and Green Valley. In 2005, Bob wrote a letter to Hugh noting the "Kansas ranch owned by Green Acres Inc. sold at Sheriff's sale & purchased by Karl and Bob." That same year, Bob's attorney wrote to Hugh and encouraged him to review any documents or records related to the family businesses.

Other litigation among the family created a division between the Jenkins plaintiffs, the Jenkins defendants, and the rest of the family. Karl circulated a proposed settlement agreement to Hugh in 2006. Among the provisions, the agreement provided:

> "Ownership of the Kansas Ranch subject to an existing mortgage of approximately $276,000.00. Karl and Bob through Green Valley Farms, LLC (the current title holder) would cause a deed to be executed conveying the real estate back to Green Acres, Inc. and all stock in that corporation would be transferred to M. Earlene Jenkins, Hugh/Marcia Jenkins, and Patty/Michael Inglish."

The Jenkins plaintiffs rejected Karl's offer.

In 2010, GAI dissolved. In 2016, Green Valley sold the Kansas Ranch to a third-party good faith purchaser.

The Jenkins plaintiffs sued the Jenkins defendants in 2017 wanting a proportionate share of the sales proceeds. They later amended their petition and alleged GAI authorized Karl and Bob to borrow funds to pay W.K.'s Inter Chem judgment so GAI could retain ownership of the Kansas Ranch. The Jenkins plaintiffs alleged Karl, Bob, and Roberta formed Green Valley and used borrowed funds from Northern to purchase the Kansas Ranch. The Jenkins plaintiffs also alleged the Jenkins defendants acted as undisclosed agents on behalf of GAI when they bought the Kansas Ranch at the sheriff's sale. According to the Jenkins plaintiffs, they retained an ownership interest in the Kansas Ranch based on the percent of stock they held when GAI dissolved in 2010.

4

The Jenkins plaintiffs now claim the Jenkins defendants breached their fiduciary duty, were unjustly enriched, and acted unconscionably in 2016 when they sold the Kansas Ranch. The Jenkins plaintiffs now seek a constructive trust to recoup the value of their interest in the sold property.

Within 60 days of receiving the petition, the Jenkins defendants moved for summary judgment. They attached an affidavit signed by Bob, some court filings from the Inter Chem litigation against W.K., the agreement between Karl, Bob, and Inter Chem, checks among those parties, and correspondence between the parties. The Jenkins defendants argued the 2-year statute of limitations and the 10-year statute of repose barred the Jenkins plaintiffs' claims. The Jenkins defendants argued the limitation periods for all the claims began in 2004 when Green Valley took title to the Kansas Ranch. The Jenkins defendants further argued the Jenkins plaintiffs knew Bob and Karl asserted ownership of the Kansas Ranch based on correspondence in 2005, or at the very latest in 2006, when the Jenkins plaintiffs received Karl's settlement proposal. The Jenkins defendants concluded that a 2-year statute of limitations expired no later than 2008 and the 10-year statute of repose expired no later than 2016.

The Jenkins plaintiffs responded, controverting some facts alleged by the Jenkins defendants by including a declaration signed by Hugh, minutes of the 2003 annual meetings for GAI and Northern, and a copy of a check from Double BK to Northern for $285,000. In 2003, Bob was president of Northern, and M. Earlene, Karl, Bob, Roberta, Hugh, Patricia, and other members of the family were also members. According to the Jenkins plaintiffs, Bob and Karl did not take out a personal loan to pay for the Kansas Ranch. Instead, the Jenkins plaintiffs alleged Northern borrowed money to satisfy the debt owed to Inter Chem. They argued Bob and Karl were not authorized to use the funds as a personal loan to fund Bob and Karl's purchase of the Inter Chem judgment. Thus, the Jenkins defendants acted as agents or nominees on behalf of GAI when they bought the Kansas Ranch. As a result, the Jenkins plaintiffs argued summary judgment was

5

inappropriate because GAI had a legally recognizable claim of ownership in the Kansas Ranch until its sale in 2016. The Jenkins plaintiffs complained discovery was not complete, but they never asked the court for additional time to complete discovery. Such a request can be made under K.S.A. 2018 Supp. 60-256(f).

During oral arguments before the district court, the parties mainly focused on the statute of limitations and statute of repose arguments raised by the Jenkins defendants. However, the Jenkins plaintiffs noted the Jenkins defendants had not contested their theory of breach of trust. The Jenkins plaintiffs also characterized the trust as a resulting or implied trust because the Jenkins defendants bought the Kansas Ranch with money from GAI.

The district court granted judgment in favor of the Jenkins defendants. The district court adopted most of the proposed factual findings provided by the Jenkins defendants, finding the uncontroverted facts sufficient to grant summary judgment. The district court also found the 2-year statute of limitations or the 10-year statute of repose barred recovery. The court reasoned the Jenkins plaintiffs were in fact injured when Green Valley bought the Kansas Ranch in 2003 and the Jenkins plaintiffs were aware of this injury by 2006 at the latest because of Karl's proposed settlement. The district court found the constructive trust claim raised by the Jenkins plaintiffs lacked merit because the constructive trust would be based on actions between 2003 and 2004.

The Jenkins plaintiffs timely moved to alter or amend judgment, explaining the Jenkins defendants did not challenge their claim for the breach of an implied or resulting trust. They also argued the district court misconstrued their argument. The district court summarily denied the request.

ANALYSIS

The Jenkins plaintiffs argue the district court erred in granting summary judgment based on the statutes of limitations and repose. This court's standard of review for summary judgment is well known.

> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson v. Cowley County, Kansas,* 307 Kan. 616, 621, 413 P.3d 432 (2018).

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.,* 296 Kan. 906, 934, 296 P.3d 1106 (2013); *Sanchez v. U.S.D. No. 469,* 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014).

Additionally, appellate courts exercise unlimited review when interpreting a statute of limitations. See *Neighbor v. Westar Energy, Inc.,* 301 Kan. 916, 918, 349 P.3d 469 (2015). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of*

*Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Ullery v. Othick*, 304 Kan. 405, 409, 372 P.3d 1135 (2016).

Under K.S.A. 60-513(a)(3), a claimant must bring a claim of fraud within two years of the fraud, but the claim "shall not be deemed to have accrued until the fraud is discovered." K.S.A. 60-513(b) provides that any claim under K.S.A. 60-513(a)

> "shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until sometime after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."

The Jenkins plaintiffs argue their claims arose in 2016 when Green Valley sold the Kansas Ranch and refused to share the proceeds with them. At first blush, this seems a sensible argument. However, if fraud occurred, it more than likely occurred in 2003, 2004, or 2006, and the Jenkins plaintiffs have never pursued those claims. Instead, they pursue claims of fraud as a result of the sale in 2016. They propose two theories to support their contention. As explained below, neither theory is persuasive.

*Jenkins plaintiffs failed to present evidence showing GAI had an ownership interest in the Kansas Ranch after 2003.*

First, the Jenkins plaintiffs argue Bob, Karl, and Green Valley acted as nominees or agents on behalf of GAI when Green Valley bought the Kansas Ranch in 2003. GAI

8

now claims they retained an ownership interest in the Kansas Ranch. The Jenkins plaintiffs also claim they received an individual interest when GAI dissolved in 2010, with each former stockholder of GAI receiving an ownership interest in the Kansas Ranch equal to the percent of shares they held in GAI. The Jenkins plaintiffs have failed to explain why they let GAI dissolve in 2010 if they still thought GAI owned the Kansas Ranch. Again, they merely allege the Jenkins defendants breached their duties and were unjustly enriched when Green Valley sold the Kansas Ranch in 2016. This argument is not persuasive.

Based on the record before the district court and this court, the district court did not err in granting summary judgment. The uncontroverted facts adopted by the district court indicate Bob and Karl acted for their own benefit, not the benefit of GAI. Had Bob and Karl intended to act on behalf of GAI, they could have paid the debt and prevented the sheriff's sale. Instead, Bob and Karl formed an agreement with Inter Chem to pay $225,000 to receive Inter Chem's right to execute and foreclose on the Kansas Ranch. This agreement includes no language indicating Bob and Karl negotiated on behalf of GAI. The agreement assigns the foreclosure rights to Bob and Karl, individually, not as agents on GAI's behalf.

Bob and Karl then bought the Kansas Ranch at the sheriff's sale through Green Valley. The property was titled to Green Valley until the ranch sold it in 2016. Noticeably absent from Green Valley's ownership are the Jenkins plaintiffs shareholders from GAI. Had Bob and Karl intended to act on GAI's behalf, they could have: (1) paid the debt and canceled the sheriff's sale to leave the ranch titled with GAI; (2) included the Jenkins plaintiffs as shareholders in Green Valley; or (3) taken title to the Kansas Ranch and notified someone they were holding title on behalf of GAI. Instead, Bob and Karl titled the ranch to Green Valley.

9

The Jenkins plaintiffs fail to support their theory of ownership with any citation to facts in the appellate record. The party raising a claim of error by the district court bears the burden of designating facts in the record to support the claim; without such a record, the claim of error fails. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013). This failure may be attributed to the lack of discovery. Generally, summary judgment in a pending case should not be granted until discovery is complete. However, if the facts pertinent to the material issues are not disputed, summary judgment may be appropriate even when discovery is unfinished. *Northern Natural Gas Co.*, 296 Kan. at 935. The Jenkins plaintiffs' only controverted facts were immaterial to whether Bob and Karl acted on behalf of GAI, so there is no genuine dispute. See *Patterson*, 307 Kan. at 621.

The Jenkins plaintiffs now claim they are entitled to additional discovery. Under K.S.A. 2018 Supp. 60-256(f), the Jenkins plaintiffs could have requested the court to allow additional discovery before granting summary judgment, but the Jenkins plaintiffs never exercised this right and without such a timely request, they are not entitled to additional discovery. See *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 966, 186 P.3d 829 (2008).

Here, summary judgment was appropriate. Based on the facts before the district court and this court, Green Valley became the owner of the Kansas Ranch in 2003 and did not hold it on GAI's behalf. GAI had no ownership interest in the Kansas Ranch in 2016, so the Jenkins defendants had no duty to the Jenkins plaintiffs when Green Valley sold the Kansas Ranch in 2016. Although the district court granted summary judgment based on the statutes of limitations and repose, this court may affirm the summary judgment because the lower court reached the correct result. See *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015).

*Did the district court err in granting summary judgment?*

The Jenkins plaintiffs argue the district court erred in granting summary judgment because the court did not address their theory of breach of a resulting trust. Even though the district court did not address this claim, this court may affirm the summary judgment because the Jenkins plaintiffs' argument is not persuasive. See *Gannon*, 302 Kan. at 744 (appellate courts may uphold the lower court's decision as right for the wrong reasons).

The Jenkins plaintiffs allege an alternative theory of recovery. They claim Bob and Karl, without consent of GAI, used money provided for GAI's benefit to purchase the Kansas Ranch for Green Valley. As a result, the Jenkins plaintiffs/GAI claim a resulting trust on the Kansas Ranch. The Jenkins plaintiffs claim the GAI shareholders then retained an individual interest in the resulting trust based on the percent of shares they held when GAI dissolved in 2010.

The Jenkins defendants contend the Jenkins plaintiffs never raised this breach of trust theory before the district court granted summary judgment. The Jenkins defendants argue the Jenkins plaintiffs first raised a breach of a resulting trust when they sought to alter or amend the district court's summary judgment. The Jenkins defendants argue the standard of review for this issue should be an abuse of discretion.

The record, however, shows the Jenkins plaintiffs raised a resulting trust issue during oral arguments on the motion for summary judgment. There, the Jenkins plaintiffs argued their breach of trust claim was never addressed by the Jenkins defendants in their briefing. The Jenkins plaintiffs also argued the Jenkins defendants used Jenkins family money to purchase the right to foreclose on the Kansas Ranch and the purchase created a resulting trust. We will use the same summary judgment standard of review as previously set out above.

Appellate courts apply the summary judgment rules to determine whether the district court erred in granting summary judgment. *Patterson*, 307 Kan. at 621. When this issue requires the interpretation of statute, this court exercises unlimited review. *Neighbor*, 301 Kan. at 918.

Under Kansas law, a resulting trust is a type of implied trust "'raised by implication of law and presumed always to have been contemplated by the parties, the intention as to which is to be found in the nature of their transaction, but not expressed in the deed or instrument of conveyance.'" *Allbert v. Allbert*, 148 Kan. 527, 530-31, 83 P.2d 795 (1938) (quoting 65 C.J. 222).

Here, the Jenkins plaintiffs contend the operating law is K.S.A. 58-2408. Generally, a trust is not formed "[w]hen a conveyance for a valuable consideration is made to one person and the consideration therefor paid by another." K.S.A. 58-2406. However, K.S.A. 58-2408 explains this rule does not apply when an

> "alienee shall have taken an absolute conveyance in his or her own name without the consent of the person *with whose money the consideration was paid*; or where such alienee in violation of some trust shall have purchased the land with moneys not his or her own; or where it shall be made to appear that by agreement and without any fraudulent intent the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof." (Emphasis added.) K.S.A. 58-2408.

The Jenkins plaintiffs allege the first exception. They claim Northern and GAI authorized Bob to obtain a loan to pay the Inter Chem debt. Bob and Karl then paid Inter Chem from those funds and bought the judgment granting them the right to execute on the Kansas Ranch.

12

In their response to the motion for summary judgment, the Jenkins plaintiffs included the 2003 meeting minutes for GAI and Northern. On July 4, 2003, the members of GAI and Northern held their annual meetings. The members of both corporations are the same family members—the Jenkins plaintiffs, the Jenkins defendants, and other family members not involved here. Hugh was president of GAI and Bob was president of Northern at the time of the meetings. The GAI minutes reflect "[t]he notice the Bourbon county property will be sold to satisfy the approximately $450,000 judgment against W.K. Jenkins has been received. The Inter-Chem lawyer had earlier agreed to settle the judgment for $225,000. We discussed whether to appeal or try to settle based on prior discussions with the lawyer." The Northern minutes note "[i]n order to obtain funds to pay the judgment against W.K. Jenkins in Bourbon county we will borrow $1,750,000 at 6.15%. Bob Jenkins will handle the loan."

The Jenkins plaintiffs also provided a copy of a check from Double BK—Bob and Karl's business—to Northern for $285,000. The Jenkins plaintiffs appear to allege this money was what Bob and Karl used to pay Inter Chem. But the record fails to support this contention or show: (1) Bob and Karl used this money to pay Inter Chem or (2) Bob and Karl used any of GAI's or Northern's money to pay Inter Chem.

Perhaps, if Bob and Karl paid Inter Chem with the $285,000, Northern, not GAI, could have had a resulting trust under K.S.A. 58-2408. But the Jenkins plaintiffs do not make a claim on behalf of Northern. Double BK paid the $285,000 to Northern, so it became Northern's money. But Bob and Karl did not use Northern to pay Inter Chem. Double BK wrote the check for $225,000 to the escrow agent, not Northern. The agent then paid Inter Chem. The evidence does not show whether any of the $285,000 in Northern's account went to pay the $225,000 check from Double BK to the escrow agent.

Additionally, the remaining evidence from the Jenkins plaintiffs does not defeat summary judgment because it does not reflect a genuine dispute of material facts. See

13

*Northern Natural Gas Co.*, 296 Kan. at 934. Karl and Bob alleged they took out a personal loan to pay Inter Chem but provided no evidentiary support for this in the record other than Bob's affidavit. The meeting minutes show Northern, not GAI, authorized Bob to take out a $1,750,000 loan at 6.15 percent interest to pay off the Inter Chem judgment. This authorization and the minutes from GAI entertaining a settlement show GAI was willing to pay $225,000 to Inter Chem, but it does not show GAI owned the $225,000, gave it to Double BK to pay Inter Chem, or that Bob received a loan on behalf of either GAI or Northern to pay Inter Chem.

Although a resulting trust, if one existed, on the Kansas Ranch could have been breached in 2016, before the statute of limitations and statute of repose ran, no evidence indicates a resulting trust existed. For this reason, we affirm the summary judgment. See *Gannon*, 302 Kan. at 744.

Affirmed.