NOT DESIGNATED FOR PUBLICATION

No. 119,989

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSIAH BUNYARD,
*Appellant*,

v.

AFFILIATED MEDICAL SERVICES LABORATORY, INC.,
*Appellee*,

and

STATE OF KANSAS, DEPARTMENT OF CORRECTIONS,
*Intervenor*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court, WILLIAM S. WOOLLEY, judge. Opinion filed June 19, 2020. Affirmed.

*Josiah Bunyard*, of Wichita, appellant pro se.

*David S. Wooding* and *Samantha M.H. Woods*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee.

Before LEBEN, P.J., SCHROEDER, J., and LAHEY, S.J.

LEBEN, J.: Police armed with a search warrant took several substances thought to be illegal drugs from Josiah Bunyard's Wichita apartment. After testing at a state lab, the State charged him with possession of controlled substances.

An attorney was appointed to represent Bunyard in the criminal case, and that attorney decided to seek independent testing of the substances. In doing so, the attorney made some significant decisions.

First, apparently to get the prosecutor to agree to let him do the tests, the defense attorney agreed to share the results with the prosecutor. By itself, that may or may not have been a reasonable decision. Without the prosecutor's agreement, the defense would have needed a court order to get materials for testing.

Second, the defense attorney decided to test a sample, called Q5, that had tested *negative* for illegal substances at the state lab. In combination, the defense attorney's decision was risky. If the independent lab found that Q5 contained controlled substances, Bunyard could then be prosecuted for that. And Bunyard's own attorney had agreed to turn that information over to the prosecutor.

Of course, since a case is now in our court, that's what happened. The lab hired by the defense found that the Q5 sample was methamphetamine. The State added a new charge—more serious than the ones already on file—for possession of methamphetamine with the intent to distribute it.

Eventually, after Bunyard got a new attorney, that attorney moved to exclude the Q5 test result. The motion argued that the State shouldn't have been entitled to that information because no reasonable attorney would have provided it. The state lab had declined to do a confirming test, so the defense-obtained test result was the only evidence supporting the charge. The district court granted the motion to exclude that evidence, and the charge related to the Q5 test result was dismissed.

But Bunyard had been in custody on a charge unrelated to this case (an aggravated battery), unable to post a sizable bond, while this played out. Bunyard eventually brought

2

suit—against the defense-hired testing lab—claiming that it was at fault for having negligently determined that the Q5 sample was methamphetamine. As a result of the lab's negligence, he argued, he had been damaged by being held in custody and by having more difficulty defending against the more-serious drug charge.

The lab hired by the defense, Affiliated Medical Services Laboratory, filed for summary judgment. The lab argued that it had no duty to Bunyard and that even if it had some duty to him and breached it, that breach wasn't the proximate cause of any damages he suffered.

When one party files for summary judgment and points to an apparent hole in the opposing party's case, the opposing party must come forward with some evidence to fill it. Otherwise, there's no factual dispute—and if the hole lies where there should be evidence of an essential element of the claim, summary judgment is proper. See *Patterson v. Cowley County*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

The district court found Bunyard's response inadequate and granted summary judgment. Bunyard has appealed to our court. When summary judgment has been granted, that happens just based on written submissions to the court, so the appellate court is in as good a position as the trial court to evaluate the claim. For that reason, we review the matter independently, with no required deference to the district court. *Hill v. State*, 310 Kan. 490, 512-13, 448 P.3d 457 (2019).

Bunyard's claim is for negligence, and a plaintiff must establish four elements for a valid negligence claim: (1) the existence of a duty; (2) breach of that duty; (3) an injury; and (4) a sufficient causal connection between the duty breached and the injury—what lawyers call "proximate causation." *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008). Even if Bunyard could satisfy the first three elements, nothing the lab did served

as the proximate cause of any damage to Bunyard. So the district court properly granted summary judgment to Affiliated Medical Services Laboratory.

Let's start with an explanation of what we mean by proximate causation. It's more than playing some minor role in a sequence of events that ends in an injury: "The injury must be the natural and probable consequence of the wrongful act. Individuals are not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience. [Citations omitted.]" *Hale*, 287 Kan. at 322.

Factoring in ordinary and usual experience makes this an easy case. Our criminal-justice system depends on an adversarial model in which the truth is revealed by adversaries in the courtroom. *United States v. Cronic*, 466 U.S. 648, 655-56, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). So "a criminal defendant is by design in an adversarial relationship with the government." *Georgia v. McCollum*, 505 U.S. 42, 67, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992) (O'Connor, J., dissenting). And the defendant in an adversarial proceeding has the right to an attorney who is looking out for the defendant's interests. See *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Moyer*, 309 Kan. 268, 278-79, 434 P.3d 829 (2019) .

These are things so basic to our criminal-justice system that they are part of the ordinary and usual experience. Taking them into account, Bunyard hasn't demonstrated that the personnel at Affiliated Medical Services Laboratory had any idea that the test results they sent back to Bunyard's attorney would be given to Bunyard's adversary, the prosecutor.

The lab presented evidence that it knew that the testing was being done for Bunyard's attorney and that it was being paid for by the Kansas Board for Indigents Defense Services, which covers such costs for indigent defendants. But they denied

4

having any knowledge that Bunyard's attorney planned to share the results with the State. Given even a general understanding of the adversarial process for criminal cases, lab personnel would have had no reason to expect that—unless they were explicitly told.

So that's the hole in Bunyard's case that he must fill to avoid summary judgment. He tried to do that with his own affidavit: "Defendant knew of [the attorney's] intent to turn test results over to District Attorney." But Bunyard doesn't provide any evidence that he had personal knowledge about what the lab's personnel were told; Bunyard does not suggest that he ever had any direct contact with them. An affidavit that's not based on personal knowledge isn't the equivalent of admissible evidence. See K.S.A. 60-419. So it doesn't provide the information Bunyard needs to avoid summary judgment.

In sum, even if Bunyard had shown everything else he needed to make a negligence claim against the lab (something we need not determine), his claim fails on proximate causation. There was no reason for lab personnel to suspect that their work for Bunyard's defense attorney would be sent to the prosecutor. And that's especially so for lab results against Bunyard's interest. Anyone dealing with Bunyard's attorney would assume, based on our adversarial system, that the attorney would act in Bunyard's best interests. The lab isn't responsible for the attorney's decision to do something against Bunyard's interests.

We've left out many details of Bunyard's claim. That's because no matter how you might assemble them, they don't change the basic story we've already outlined. Bunyard's claim against the lab depends on the lab having reason to suspect that its work would be turned over to the State even if it might harm Bunyard. There's simply no evidence to support that.

The district court properly granted summary judgment. We therefore affirm the district court's judgment.