NOT DESIGNATED FOR PUBLICATION

No. 122,472

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AARON DOUGLAS UNRUH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Marion District Court; MICHAEL F. POWERS, judge. Opinion filed October 15, 2021. Affirmed.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., SCHROEDER, J., and WALKER, S.J.

PER CURIAM: After pleading no contest to two counts of aggravated endangering of a child and one count of criminal restraint, Aaron Douglas Unruh was ordered to register as a violent offender under the Kansas Offender Registration Act (KORA). On appeal, Unruh challenges KORA as being unconstitutional because it permits judicial fact-finding, does not offer potential offenders an opportunity to challenge the discretionary findings, and it lacks an express standard of proof. He also argues the revised Kansas Sentencing Guidelines Act (KSGA) violates the federal and state Constitutions because it permits judicial fact-finding of prior convictions.

1

After careful review of the record, we find Unruh's first challenge to KORA fails because he did not present "the clearest proof" needed to show his registration was punitive. His second KORA challenge fails because even if his registration deprived him of his protected rights, he did not show he was denied a meaningful opportunity to be heard. Unruh's third challenge also lacks merit because multiple panels of this court have found the proper burden of proof for discretionary registration findings is preponderance of the evidence. Finally, Unruh's challenges to the KSGA also fail because our Supreme Court has rejected this argument under both the federal and state Constitutions.

FACTS

In keeping with a plea agreement, in November 2019 Unruh pled no contest to two counts of aggravated endangering of a child and one count of criminal restraint. After finding his criminal history score was H, the district court granted probation and sentenced Unruh to an underlying 13 months' imprisonment and a 12-month jail term. Based on his criminal restraint conviction, the district court ordered Unruh to register as a violent offender under KORA for 15 years. See K.S.A. 2016 Supp 22-4902(e)(1)(H) (defining "[v]iolent offender" as any person who is convicted of criminal restraint under K.S.A. 2016 Supp. 21-5411); see also K.S.A. 2016 Supp. 22-4906(a)(1)(J) (requiring person convicted of criminal restraint to register under KORA for 15 years).

Unruh has timely appealed from the district court's orders.

ANALYSIS

*The constitutionality of Unruh's offender registration order*

For the first time on appeal, Unruh argues his offender registration requirement violates *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), because the judge employed impermissible fact finding to establish (1) he was not

2

the victim's parent and (2) the victim was less than 18 years old. See K.S.A. 2016 Supp. 22-4902(e)(1)(H) ("'Violent offender' includes any person who:  On or after July 1, 1997, is convicted of . . . criminal restraint . . . except by a parent, and only when the victim is less than 18 years of age."). He contends his registration was "punitive" because the judge's fact-finding increased his punishment. The State responds by arguing Unruh did not preserve this issue for appellate review, but even if he had, Unruh had the burden of proving he did not fit the definition of a violent offender under K.S.A. 2016 Supp. 22-4902(e)(1)(H).

Unruh concedes he did not object to the imposition of offender registration at the district court. Generally, appellate courts will not consider legal theories, including constitutional claims, that were not raised in the courts below. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Even so, there are exceptions to the general rule against asserting a new legal theory on appeal, including:  (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) the district court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Unruh contends he meets two of these exceptions. First, he argues the panel may consider his claim because review of this issue would prevent the denial of a fundamental right. Second, he argues his new legal theory involves only a question of law and is finally determinative of the case. Unruh correctly asserts that other panels have considered this type of claim under the prevention of the denial of a fundamental right exception. See *State v. Weis*, 47 Kan. App. 2d 703, 717, 280 P.3d 805 (2012); *State v. Huey*, No. 109,690, 2014 WL 1707807, at *3 (Kan. App. 2014) (unpublished opinion), *aff'd* 306 Kan. 1005, 399 P.3d 211 (2017).

Even so, "[t]he decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, [the panel has] no obligation to do so. [Citations omitted.]" *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020) (citing *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 [2017]). But based on *Weis* and *Huey*, we will consider Unruh's claim for the first time on appeal.

We also note that we have jurisdiction to consider this claim under K.S.A. 2016 Supp. 22-3602(a), which grants an appellate court jurisdiction to consider offender registration issues, despite the type of plea. See *State v. Marinelli*, 307 Kan. 768, 788, 415 P.3d 405 (2018) (defendant may appeal imposition of registration requirement as "'judgment . . . decision . . . or intermediate order made in the progress of the case'" under K.S.A. 2018 Supp. 22-3602[a]). In *State v. Carter*, 311 Kan. 206, 209, 459 P.3d 186 (2020), our Supreme Court extended the holding in *Marinelli* and considered Carter's registration challenge even though she did not object to the imposition of registration below.

As a result, we will consider Unruh's registration challenge, despite him pleading no contest and failing to raise the issue below.

KORA requires individuals convicted of certain crimes to register with the State. K.S.A. 2016 Supp. 22-4906. One category of individuals required to register are violent offenders. See K.S.A. 2016 Supp. 22-4902(e). KORA provides multiple ways in which a person may qualify as a violent offender and thus be subject to the Act's registration requirement. See K.S.A. 2016 Supp. 22-4902(e). The relevant section here is K.S.A. 2016 Supp. 22-4902(e)(1)(H), which defines a violent offender as a person who "[o]n or after July 1, 1997, is convicted of . . . criminal restraint, as defined in K.S.A. 21-3424, prior to its repeal, or K.S.A. 2016 Supp. 21-5411, and amendments thereto, *except by a parent, and only when the victim is less than 18 years of age. . . .*" (Emphasis added.)

Unruh attacks his registration requirement by arguing the district court violated his constitutional rights under *Apprendi* when the judge—rather than a jury—determined (1) he was not the victim's parent and (2) the victim was less than 18 years old. Unruh does not argue the district court's fact-finding was incorrect; rather he argues more generally that registration is "punitive" when it is imposed on the basis of judicial fact-finding, and therefore it violates *Apprendi*.

"Whether a defendant's constitutional rights as described under *Apprendi* were violated by a district court at sentencing raises a question of law subject to unlimited review." *State v. Dickey*, 301 Kan. 1018, 1036, 350 P.3d 1054 (2015). And to the extent this issue requires us to engage in statutory interpretation, de novo review applies. *State v. Buell*, 307 Kan. 604, 606, 412 P.3d 1004 (2018).

Under *Apprendi*, only facts that increase the penalty, or punishment, for a crime need to be submitted to a jury. 530 U.S. at 490. But the Kansas Supreme Court has repeatedly rejected the argument that offender registration under KORA is punishment. See e.g. *Carter*, 311 Kan. at 217; *State v. Perez-Medina*, 310 Kan. 525, 539-40, 448 P.3d 446 (2019); *State v. Huey*, 306 Kan. 1005, 399 P.3d 211 (2017).

In *Huey*, the Kansas Supreme Court found that because the Kansas Legislature intended KORA to be a civil regulatory scheme—not punishment—a defendant must present the clearest proof that registration is punitive before the court would consider registration to be a criminal penalty. 306 Kan. at 1010. To that end, the court must consider several factors to determine whether KORA's effects render it punitive as applied to violent offenders. These questions are fact intensive and require a clear record. See *State v. Meredith*, 306 Kan. 906, 913, 399 P.3d 859 (2017) ("[A]nalysis of the [*Kennedy v.*] *Mendoza-Martinez*[, 372 U.S. 144, 168-69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963),] factors requires a robust record because the effects prong of the applicable legal test obliges an appellate court to premise its legal conclusion on at least some fact-

intensive questions—*i.e.*, the legitimacy of the public safety interests at stake, the effectiveness of the alternative purpose to promote public safety, etc.").

The *Huey* court found that the defendant raised his *Apprendi* argument for the first time on appeal and failed to present facts in district court which showed that the registration's effects on him were punitive. Without a record, our Supreme Court held it could not conclude the effects of KORA were so punitive as to override the Legislature's intent that KORA be a civil remedy. *Huey*, 306 Kan. at 1010. The court reiterated this decision in *Meredith*, finding the record was insufficient to analyze the claim "because Meredith produced no factual record and made no arguments below concerning KORA's punitive effects." 306 Kan. at 913. The *Meredith* court compared the defendant's record to the record in *Smith v. Doe*, 538 U.S. 84, 105, 123 S. Ct. 1140, 115 L. Ed. 2d 164 (2003), a case where the United States Supreme Court "relied in part for its holding on social science data concerning recidivism and public safety." *Meredith*, 306 Kan. at 913. The *Meredith* panel continued: "We do not have access to similar data concerning drug or violent offenders in the record as it has been presented to us." 306 Kan. at 913.

Just as in *Huey*, Unruh did not raise his *Apprendi* claim before the district court and has provided no fact-based record for us to evaluate KORA's alleged punitive effects on him. Unruh concedes our Supreme Court "has continued to reject this question" but attempts to distinguish his case by arguing *Carter*, and its progeny*,* have not considered whether "denying a criminal defendant the ability to expunge a conviction constitutes punishment for ex post facto purposes."

To make his argument, Unruh relies on *State v. Anderson*, 12 Kan. App. 2d 342, 344-45, 744 P.2d 143 (1987), where the panel considered whether the retroactive denial of expungement rights by a change in Kansas law violated the Ex Post Facto Clause of the United States Constitution. Although *Anderson* may seem to support Unruh's proposition, in fact it is quite distinguishable.

6

In *Anderson*, the district court denied the defendant's application to expunge his 1974 conviction for aggravated indecent solicitation of a child. At the time of Anderson's conviction, Kansas law allowed a person convicted of that crime to apply for expungement 5 years after successfully completing probation. In 1986, the Kansas Legislature amended the law to prohibit any expungement of sex crimes. At the time Anderson applied for expungement, the new law had taken effect and the district court denied his petition based upon the change. In reversing the district court, the *Anderson* panel noted that for a criminal or penal law to be ex post facto, the law must be retrospective, and it must disadvantage the offender affected by it. 12 Kan. App. 2d at 344. In considering whether the defendant was disadvantaged, "'[t]he critical question . . . is whether the new provision imposes greater punishment after the commission of the offense, not merely whether it increases a criminal sentence.'" 12 Kan. App. 2d at 344 (quoting *Weaver v. Graham*, 450 U.S. 24, 32 n.17, 101 S. Ct. 960, 67 L. Ed. 2d 17 [1981]). Applying this standard, the *Anderson* panel held that "denying defendant the opportunity to expunge his criminal record constitutes a punishment and denying him the opportunity to remove his criminal record disadvantages him." 12 Kan. App. 2d at 345.

Standing alone, the quoted language would appear to support Unruh's proposition. But the holding in *Anderson* is distinguishable from the issue here because *Anderson* considered whether a legislative change resulting in the denial of expungement was punishment for purposes of violating the Ex Post Facto Clause. This finding cannot be the clearest proof Unruh needed to consider registration a criminal penalty in violation of *Apprendi*. *Huey*, 306 Kan. at 1010. Unruh's admission that he "would be free to expunge his criminal history after three or five years of completion of his sentence" clearly shows he has not suffered a similar outright elimination of his expungement rights by retroactive legislative fiat. This does not meet the standard of clearest proof. 306 Kan. at 1010.

We are duty-bound to follow Kansas Supreme Court precedent, unless there is some indication the court is departing from its previous position. *State v. Rodriguez*, 305

Kan. 1139, 1144, 390 P.3d 903 (2017). Thus, Unruh has not shown that his registration requirements as a violent offender are punishment. Because the registration order did not increase Unruh's punishment, it was unnecessary that a jury find beyond a reasonable doubt that (1) he was not the victim's parent and (2) the victim was less than 18 years old. Unruh's duty to register as a violent offender under KORA did not violate *Apprendi*.

*Allegations that KORA violates due process because it lacks a standard of proof and a method to contest the district court's findings*

Next, Unruh contends KORA is unconstitutional because K.S.A. 2016 Supp. 22-4902(e)(2) contains no explicit standard of proof. He also argues KORA is unconstitutional because it does not provide a process to contest a discretionary finding under K.S.A. 2016 Supp. 22-4902(e)(1)(H). In response, the State argues Unruh is improperly raising this issue for the first time on appeal, the district court did not make a discretionary finding, and multiple panels of this court have found the Legislature intended for district courts to use a preponderance of the evidence standard of proof in registration inquiries.

Once again, Unruh concedes he "did not explicitly advance a due process argument at either the plea or sentencing hearings." See *Daniel*, 307 Kan. at 430. But, as in the first issue, he argues that consideration of this issue is necessary to prevent the denial of a fundamental right. He also correctly asserts that panels of our court have considered these types of claims even though they were not raised below. See *State v. Epp*, No. 121,872, 2020 WL 6930597, at *2 (Kan. App. 2020) (unpublished opinion); *State v. Ford*, No. 119,328, 2019 WL 3242420, at *2-3 (Kan. App. 2019) (unpublished opinion), *rev. denied* 311 Kan. 1048 (2020).

As a result, we once again choose to consider this issue, although we are under no obligation to do so. See *Gray*, 311 Kan. at 170.

Determining a statute's constitutionality is a question of law subject to unlimited review. "'We presume statutes are constitutional and must resolve all doubts in favor of a statute's validity.'" *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127 (2016). Our duty is to interpret a statute in a way that makes it constitutional if there is any reasonable construction that would maintain the Legislature's apparent intent. *State v. Gonzalez*, 307 Kan. 575, 579, 412 P.3d 968 (2018).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution precludes the government from "depriv[ing] a person of a property right or a liberty interest without affording that person the opportunity to be heard in a meaningful way and at a meaningful time to avert a wrongful deprivation of that right or interest." *State v. Gonzalez*, 57 Kan. App. 2d 618, Syl. ¶ 1, 457 P.3d 938 (2019); see *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (The Due Process Clause "at a minimum" requires that "deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case."). Notwithstanding its fundamental character, "[c]onstitutional due process is an especially elastic concept in that the protections required vary depending upon the importance of the specific property right or liberty interest at stake." *Gonzalez*, 57 Kan. App. 2d 618, Syl. ¶ 2.

Unruh argues that KORA violates offenders' due process rights in two ways. First, he contends KORA did not give him an opportunity to contest the district court's exercise of a discretionary finding that (1) he was not the victim's parent and (2) the victim was less than 18 years old. See K.S.A. 2016 Supp. 22-4902(e)(1)(H) (defining violent offender as including persons convicted of criminal restraint). Second, Unruh contends that KORA fails to specify the burden of proof required to find that (1) an offender is not

the victim's parent and (2) the victim was less than 18 years old. Three panels of our court have addressed the two claims Unruh asserts on appeal. Each panel has denied relief on these issues.

In *Ford* and *Epp*, the panels did not consider the specific question of whether the offender's registration requirements impinge on protected liberty and property interests. Instead, the panels accepted these claims at face value and immediately proceeded to consider whether the offenders were afforded a meaningful opportunity to be heard. See *Epp*, 2020 WL 6930597, at *3. Most recently, in *State v. Ruwart*, No. 121,621, 2021 WL 1703646, at *3 (Kan. App. 2021) (unpublished opinion), the panel found the offender showed that her registration requirement impinged on her protected liberty and property interests because offenders are required to pay fees, and "[o]ver the course of the 15-year term of registration that Ruwart must abide, the fees would be between $1,200 and $3,600." The panel held: "That amount of money cannot be characterized as de minimis and represents a constitutionally protected property right affected by KORA." 2021 WL 1703646, at *3.

Unruh contends KORA impedes his property and liberty interests because of the fee requirements accompanying offender registration, among other arguments. But, like *Ford*, *Epp*, and *Ruwart*, Unruh has not shown he was denied a meaningful opportunity to be heard.

Unruh argues KORA violates due process because the Act's statutory language does not include an express provision giving persons the opportunity to dispute their violent offender designation. The *Ford*, *Epp*, and *Ruwart* panels all considered this argument based upon challenges to a district court's finding that a deadly weapon was used in the commission of a person felony. See K.S.A. 2020 Supp. 22-4902(e)(2) ("violent offender" includes any person convicted of a person felony on or after July 1, 2006, when "the court makes a finding on the record that a deadly weapon was used in

the commission of such person felony"). The analysis and holdings in these cases are nevertheless applicable to Unruh's argument because Unruh is making essentially the same argument but challenging a different subsection. Unruh challenges KORA's lack of an express provision to contest the district court's discretionary finding under K.S.A. 2016 Supp. 22-4902(e)(1)(H) that (1) he was not the victim's parent and (2) the victim was less than 18 years old. In contrast, the offenders in *Ford*, *Epp*, and *Ruwart* challenged the district court's discretionary finding that a deadly weapon was used in the commission of their crimes under K.S.A. 22-4902(e)(2). Regardless of the subsection and required factual findings, Unruh is submitting the same argument to this panel as was submitted in *Ford*, *Epp*, and *Ruwart.*

In *Ruwart*, the panel assumed the offender had a protected right to be heard on the district court's deadly weapon finding:

> "Ruwart then argues KORA violates the Due Process Clause because the statutory language includes no express provision giving individuals the opportunity to dispute their designation as ostensible violent offenders required to register and report. But, by the same token, KORA does not preclude some form of due process hearing on a district court's consideration of a deadly weapon finding. The statutory silence supports Ruwart's argument for an opportunity to be heard if for no other reason than as a matter of constitutional avoidance. See *Johnson v. U.S. Food Service*, 312 Kan. 597, 602-03, 478 P.3d 776 (2021) (Courts should prefer a plausible interpretation of a statute that avoids a constitutional defect, so long as it does not conflict with the express language or an obviously contrary legislative intent.). We, therefore, assume Ruwart had a protected right to be heard on the district court's deadly weapon finding." 2021 WL 1703646, at *3.

But, even assuming Ruwart had a protected right to be heard, the panel held that the record showed she "had an opportunity to speak to the point" at the plea hearing and at her sentencing. 2021 WL 1703646, at *3. The *Ruwart* panel reasoned that the offender's attorney made an argument that a car could not be a deadly weapon, but the

attorney "did not ask for and, therefore, was not denied the opportunity to present witnesses or other evidence about the underlying circumstances, and he did not otherwise challenge the facts themselves." 2021 WL 1703646, at *3. The panel concluded: "Ruwart received the due process she sought, and she cannot now complain she was denied something she never requested." 2021 WL 1703646, at *3.

In *Ford*, the offender primarily challenged whether notice was reasonably calculated to afford him an opportunity to present an objection, but the panel nevertheless found he was given an opportunity to be heard. The panel held:

> "As we have already noted, after sentencing the State and Ford disputed whether the journal entry should include a registration requirement. At a special hearing to resolve the journal entry, Ford was given the opportunity to argue that, although the district court found a gun was used, 'there was no finding that it was a dangerous weapon and there was no finding that it was a registration order.' In response, the district court then clarified that the gun was a dangerous weapon that was used in the commission of the offense. Ford did not object to this finding nor did he ask the court to reconsider its ruling." 2019 WL 3242420, at *4.

In *Epp*, the panel found the offender "had many meaningful opportunities to be heard on the issue of whether he used a deadly weapon in committing the crime of criminal threat." 2020 WL 6930597, at *5. These many meaningful opportunities included at the plea hearing, after the presentence investigation (PSI) report was issued, and at sentencing. 2020 WL 6930597, at *3-5. The panel also noted Epp "did not just fail to challenge the court's finding that he committed criminal threat with a firearm, he expressly acknowledged that he did" when he filed his motion for dispositional departure. 2020 WL 6930597, at *5. In sum, the panel held:

> "During the plea, he did not object when the State read its proffer of evidence that a firearm was used in the commission of the crime. Epp did not object to the PSI report,

12

which stated this was a presumptive prison case under K.S.A. 2019 Supp. 21-6804(h), because a firearm was used in the commission of the crime. Epp filed a motion and argued in favor of a departure on a case that would have been presumptive probation absent the firearm. At the sentencing hearing, the district court specifically provided both Epp's attorney and Epp himself the opportunity to speak to the firearm finding for purposes of registration. Defense counsel responded to this inquiry by stating she did not think Epp should be required to register 'for life or 10 years' as the result of a criminal threat conviction. But conspicuously missing from counsel's response was any challenge or objection to the State's request for a finding that Epp used a deadly weapon in committing the crime of criminal threat. Instead, they both used the time to argue in favor of a dispositional departure from presumptive prison based on progress Epp had made in drug treatment and in trying to get his children back into his home." 2020 WL 6930597, at *5.

As in *Ruwart*, *Ford*, and *Epp*, Unruh had meaningful opportunities to challenge or object to the imposition of offender registration based on the facts that (1) he was not the victim's parent and (2) the victim was less than 18 years old. In his tender of plea, Unruh acknowledged that he not only understood his prison sentence, but he also understood he would "be subjected to 12 months post release supervision and 15 years of violent offender registration." At this plea hearing, the State proffered to the district court that there was a 15-year "registration requirement, due to the criminal restraint." Even so, the district court did not "have the registration-notification form available," and neither party objected to "take care of that at sentencing." Before the hearing ended, Unruh's attorney confirmed there was "no problem with the factual basis" of Unruh's criminal restraint plea.

Like the offender in *Epp*, Unruh's PSI report also indicated offender registration was required based on his criminal restraint conviction. The offender registration supplement specifically noted Unruh was required to register for 15 years based on his criminal restraint conviction "except by parent, and only when victim is <u>less than 18 years of age</u>." There is no indication in the record that Unruh objected to the report's

identification that his criminal restraint conviction required offender registration. In fact, there is no indication in the record that Unruh objected to any information in the PSI report. At sentencing, Unruh's attorney requested the district court "adopt the recommendation of the PSI [report], with a couple of exceptions." Of the exceptions proffered, none included a challenge to Unruh's offender registration requirement or a challenge to the factual findings that (1) he was not the victim's parent and (2) the victim was less than 18 years old.

In addition, not only did Unruh fail to object to these issues at any point before this appeal, he also proactively asserted his registration requirement to the district court. At the end of sentencing, this colloquy occurred:

> "THE COURT: . . . I think that covers everything, folks, unless there's something else that you can think of, that I've missed.
> "[THE PROSECUTOR]: I think that covers everything.
> "THE COURT: Okay. Thank you.
> "[DEFENSE COUNSEL]: Judge, I don't think we've ever completed registration. I don't know how this got (unintelligible).
> "THE COURT: We haven't done registration?
> "THE DEFENDANT: Uh-uh.
> "[DEFENSE COUNSEL]: We didn't do it at (unintelligible).
> "THE DEFENDANT: You pushed it out to this date.
> . . . .
> "THE COURT: . . . [Defense counsel is] going to hand you a copy of the notice of (unintelligible) to register, which advises you that as of this date, which actually the conviction took place, previous, but in any event, we'll go with this date. You have three business days to report to a registering law-enforcement agency, in the county of conviction, which is this county, or as well as in any place where you live, work, or attend school."

14

The record clearly shows Unruh had many meaningful opportunities to object or challenge his registration requirement based on the factual findings he challenges now on appeal. As the *Ruwart* panel held, Unruh "received the due process [he] sought, and [he] cannot now complain [he] was denied something [he] never requested." 2021 WL 1703646, at *3. Unruh has not shown his registration requirement under KORA violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

In addition to the preceding challenge to KORA, Unruh also argues KORA is unconstitutional because K.S.A. 2016 Supp. 22-4902(e)(1)(H) contains no explicit standard of proof for offender registration. In light of this alleged deficiency, Unruh argues that due process required the district court in his case to find beyond a reasonable doubt that (1) defendant was not the victim's parent and (2) the victim was less than 18 years old.

Unruh acknowledges that panels of our court have determined the proper burden of proof for discretionary registration findings is preponderance of the evidence. See *Epp*, 2020 WL 6930597, at *6; *Ford*, 2019 WL 3242420, at *4-6. But Unruh argues that *Ford* was wrongly decided because the panel "simply discounted the impact on the fundamental interest in liberty KORA imposes on registrants." The defendant in *Epp* made the same argument to distinguish *Ford*, and the panel found it was unpersuasive.

The *Ford* panel held the Legislature intended for district courts to use a preponderance of the evidence standard when determining whether a defendant used a deadly weapon under K.S.A. 2018 Supp. 22-4902(e)(2). The panel reasoned:

> "The failure of K.S.A. 2018 Supp. 22-4902(e)(2) to mention a burden of proof suggests a preponderance of evidence standard. This conclusion is further supported by the Legislature's inclusion of a beyond [a] reasonable doubt standard in subsection (c)(18) of K.S.A. 2018 Supp. 22-4902, which provides that a sex offender includes a

person convicted of a crime involving 'any act which has been determined beyond a reasonable doubt to have been sexually motivated.' If we were to presume that proof beyond a reasonable doubt is required on all the district court's findings under K.S.A. 2018 Supp. 22-4902, then the language in K.S.A. 2018 Supp. 22-4902(c)(18) specifying the beyond a reasonable doubt standard would become superfluous. See *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 626, 413 P.3d 432 (2018) ('We generally presume "the legislature does not intend to enact useless or meaningless legislation."'). As a result, we conclude that the Legislature intended for the district court to use a preponderance of the evidence standard when determining whether a defendant used a deadly weapon under K.S.A. 2018 Supp. 22-4902(e)(2)." 2019 WL 3242420, at *5.

The panel in *Epp* agreed, finding the panel's reasoning in *Ford* was sound. In reaching this conclusion, the *Epp* opinion summarized the reasoning in *Ford*. Although the *Ford* and *Epp* panels considered the burden of proof for deadly weapon findings under K.S.A. 22-4902(e)(2), the reasoning supports the same conclusion under Unruh's challenge to K.S.A. 22-4902(e)(1)(H):

"The *Ford* panel explained that a preponderance of the evidence standard does not violate due process in this context because 'the function of a standard of proof is to instruct the fact-finder to the level of confidence that society expects for a particular decision' and that '[t]he different standards of proof reflect the differences in how society believes the risk of error should be distributed between the parties.' 2019 WL 3242420, at *5. The panel noted that the most stringent burden of proof, beyond a reasonable doubt, applies to criminal trials due to the gravity of the private interests affected and that due process requires the State to prove the guilt of an accused beyond a reasonable doubt on each element of the crime charged. 2019 WL 3242420, at *5.

"The *Ford* panel also pointed out that a preponderance of the evidence standard applies to all civil actions unless a fundamental individual interest or right is at stake, such as a case involving the termination of parental rights or the civil commitment of a mentally ill patient. 2019 WL 3242420, at *5; see K.S.A. 2019 Supp. 38-2269(a) (clear and convincing standard of proof applies to all termination of parental rights cases); K.S.A. 2019 Supp. 59-2966 (clear and convincing standard of proof required for civil commitment of mentally ill). The panel indicated that there is a higher risk of erroneous

16

fact-finding in termination of parental rights cases because the proceedings "'employ imprecise substantive standards that leave determinations unusually open to the subjective findings of the judge'" and are often vulnerable to cultural or class bias to the detriment of poor or uneducated parents who lack the resources to mount a defense to the State's case. 2019 WL 3242420, at *6. The panel held that using a preponderance of the evidence standard in a deadly weapon finding does not create a similar undue risk of an erroneous deprivation of private interests. The panel reasoned that whether a defendant used a deadly weapon is an objective standard that is not so susceptible to subjective values or biases of a judge and that concerns about disparities in litigation resources are not as common in a deadly weapon finding as they are in a finding of parental unfitness. 2019 WL 3242420, at *6.

"Given the relatively low risk of depriving defendants affected by KORA registration of their private interests by using a preponderance of the evidence standard, as well as the fact that offender registration requirements do not implicate interests as fundamental or important as those which trigger a heightened standard of proof, the Ford panel held that a deadly weapon finding for purposes of KORA registration does not trigger that heightened standard. The panel further held that any privacy interest was outweighed by the government's considerable interest in protecting the public. 2019 WL 3242420, at *6." *Epp*, 2020 WL 6930597, at *6-7.

Relying on this reasoning, the *Epp* panel found the offender's attempt to argue *Ford* was wrongly decided was unpersuasive. The panel held KORA's reporting and fee requirements—the same protected interests argued by Unruh—"do not implicate privacy rights or other interests as fundamental or significant as those which trigger a heightened standard of proof." 2020 WL 6930597, at *7. The panel similarly found the impact that KORA imposes on an offenders' private interests "does not rise to the level of the fundamental interests involved in the parent-child relationship or the liberty interests at issue in civil commitment and criminal cases and thus does not warrant application of a stricter standard of proof." 2020 WL 6930597, at *7.

17

We agree with the reasoning of the *Ford* and *Epp* panels. We believe their analysis was sound, and Unruh has not shown his private interests impacted by KORA rise to the level of warranting a stricter standard of proof.

In sum, we find that KORA does not violate offenders' due process rights by failing to outline a process by which to contest discretionary factual findings under K.S.A. 2016 Supp. 22-4902(e)(1)(H) or by failing to provide a burden of proof.

*KSGA and section 5 of the Kansas Constitution Bill of Rights*

Finally, Unruh argues the KSGA violates his state and federal constitutional rights to a jury trial because it permits judicial fact-finding of prior convictions. Those findings, Unruh contends, enhance a defendant's sentence without first requiring the State to prove those convictions to a jury beyond a reasonable doubt. According to Unruh, judicial fact-finding violates the Sixth Amendment to the United States Constitution, as set forth in *Apprendi* and section 5 of the Kansas Constitution Bill of Rights.

Unruh concedes he did not challenge the constitutionality of the KSGA at sentencing, but correctly argues he can raise this issue for the first time on appeal. See *State v. Albano*, 313 Kan. 638, 640, 487 P.3d 750 (2021) ("[The defendant] is challenging the KSGA itself, rather than her individual sentence. Therefore, her constitutional challenge is not subject to the jurisdictional bar set forth in K.S.A. 2020 Supp. 21-6820[c][1].").

A constitutional challenge to the KSGA involves a question of law subject to unlimited review. *State v. Wetrich*, 307 Kan. 552, 555, 412 P.3d 984 (2018).

Unruh also concedes the Kansas Supreme Court has rejected the argument he makes about *Apprendi* and criminal history scores in *State v. Ivory*, 273 Kan. 44, 46-48,

18

41 P.3d 781 (2002). Since then, our Supreme Court has reaffirmed *Ivory* numerous times. See *Williams*, 299 Kan. at 941; *State v. Baker*, 297 Kan. 482, 485, 301 P.3d 706 (2013). Because there is no indication that our Supreme Court is departing from its earlier position in *Ivory*, we must follow that precedent. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (Kansas Court of Appeals is duty-bound to follow Kansas Supreme Court precedent unless some indication court is departing from previous position.).

Unruh's claim under the Kansas Constitution is that section 5 preserves the jury trial right as it historically existed at common law when the state's Constitution came into existence. *Hilburn v. Enerpipe Ltd.*, 309 Kan. 1127, 1133-34, 442 P.3d 509 (2019). Relying on cases cited by Justice Clarence Thomas in his *Apprendi* concurrence, Unruh asserts there was an American common-law right to a jury trial on penalty enhancing prior convictions that predates Kansas statehood. And because the KSGA relies on judicial prior conviction findings to determine presumptive sentences, Unruh surmises that the KSGA violates the common-law right to a jury trial enshrined in section 5.

Recently, our Supreme Court considered and rejected a similar argument in *Albano*. The Supreme Court held:

> "Section 5 of the Kansas Constitution Bill of Rights does not guarantee defendants the right to have a jury determine the existence of sentence-enhancing prior convictions under the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2020 Supp. 21-6801 et seq.; no authority substantiates that defendants had such a jury trial right at common law when our state Constitution was adopted." 313 Kan. 638, Syl. ¶ 4.

Absent an indication our Supreme Court is departing from this precedent, we must follow this precedent and find Unruh's argument regarding this sentencing issue is not persuasive. See *Rodriguez*, 305 Kan. at 1144.

Affirmed.